664

Bambrick *v*. Asten Hill Mfg. Co., et al.
Utter *v*. Asten Hill Mfg. Co., et al.
Utter *v*. Asten Hill Mfg. Co., et al.

Argued April 6, 1972, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*John F. McElvenny,* with him *Frederick W. Anton,
III,* for appellant, Asten Hill Mfg. Co. and Pa. Manu-
facturers' Assoc. Ins. Co.

*Joyce Ullman,* Special Assistant Attorney General,
for appellant, Commonwealth.

*Stephen E. Levin,* Special Assistant Attorney General, for appellant, Insurance Fund.

*Joseph V. Furlong, Jr.,* with him *Tabas, Smith & Furlong,* for appellees.

OPINION BY JUDGE WILKINSON, May 25, 1972:

We are here concerned with three appeals which arise as a result of claims brought pursuant to Section 310(e) of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, No. 264, as amended, 77 P.S. §1401(e) which provides that ". . . Compensation shall be payable . . . for total disability or death caused by . . . asbestosis. . . ."

The three claimants were successful before the referee and were awarded compensation. The defendants, Asten Hill Manufacturing Company, and its insurance carriers, State Workmen's Insurance Fund and the Pennsylvania Manufacturers' Association Insurance Company, and the Commonwealth, Department of Labor and Industry, Occupational Disease Division, appealed to the Workmen's Compensation Board (Board) which affirmed the decision of the referee. Appeals were taken to the Court of Common Pleas of Philadelphia County which affirmed the awards by the Board. These appeals followed.

Our scope of review where the Board has made awards in favor of the claimants is to determine whether or not there is substantial evidence to support the findings of the Board, giving to the claimant, who has the award, the benefit of the most favorable inferences deducible from the testimony. *DeMascola v. Lancaster,* 200 Pa. Superior Ct. 365, 189 A. 2d 333 (1963).

While the three claims are treated separately herein, the occupational disease, asbestosis, the claimants' medical expert, and the employer, Asten Hill Manufacturing Company, are common to all claims.

## Claim of Robert T. Utter

The claimant was employed by the defendant, Asten Hill, in various capacities from October 14, 1946, until August 10, 1966, when he was last employed as a weaver. Asten Hill is engaged in the manufacture of dryer felts from asbestos. On September 26, 1966, the claimant filed a claim petition for compensation alleging that he became totally disabled as a result of asbestosis in June 1966. The defendants by answer denied the allegation. On November 15, 1966, the claimant was hospitalized where he remained until his death on February 25, 1967, at the age of 44 years. The claimant died before the initial hearing was held on his petition.

We have reviewed the record carefully and find that there is no testimony to support a finding that the claimant was totally disabled prior to his death. This is not a case where there is insufficient evidence upon which to base a finding. There is *no* evidence upon which to base a finding of total disability.

## Claim of Margaret R. Utter,
### Widow of Robert T. Utter

Following the death of her husband, the claimant filed a fatal claim petition alleging that her husband's death was caused by asbestosis. The defendants by answer denied the allegation.

In support of her fatal claim petition at the initial hearing, claimant produced the Plant Superintendent of Asten Hill who testified from deceased's wage and work records. In addition, claimant produced the clerk from the medical records department of the Women's Medical College Hospital who introduced records and x-ray films of the deceased, as well as the clerk from the medical records department of the Episcopal Hospital who introduced records and x-ray films relating to deceased's two admissions in 1966 and the autopsy report.

In response to a hypothetical question based upon the records, x-ray films and the autopsy report, claimant's medical expert never having seen or examined the deceased replied that in his opinion, the deceased had asbestosis. When he was asked if he had an opinion as to whether the death was causally related to asbestosis, he replied: "A. In my opinion there can be very little doubt that Mr. Utter's death was due to lung cancer causally related to his *asbestos exposure.*" (Emphasis added)

The difference between the question asked and the response elicited is determinative of this appeal. Asbestos is a collective term used to describe several different varieties of magnesium silicates, each of which has its unique chemical and physical properties, but all of which share in common the unusual quality of being minerals which occur naturally in fibrous form. 5 Gordy-Gray, *Attorneys' Textbook of Medicine,* ¶205C.-11 (3d. Ed. 1970). Asbestosis is a clearly definable medical term used to describe a disease. Asbestosis is a pneumoconiosis resulting from the inhalation of asbestos fiber dust (hydrated magnesium silicate in fibrous form). It is characterized by a diffuse pulmonary alveolar fibrosis, and the presence of 'asbestos bodies'." 5 Gordy-Gray, *Attorneys' Textbook of Medicine,* ¶205C.-01 (3d. Ed. 1970). We would do harm to the reputation of claimant's medical expert to say that he meant asbestosis when he said asbestos exposure, as well as exceed our judicial prerogative. The General Assembly has limited recovery to death caused by asbestosis, not asbestos exposure. There is insufficient evidence upon which to base a finding of death caused by asbestosis.

*Claim of Alice Bambrick,*
*Widow of Cecil Bambrick*

The decedent, Cecil Bambrick, was employed by Asten Hill from September 5, 1950, until October 30,

1962. The decedent was employed in various occupations which did not involve an asbestos hazard from his leaving Asten Hill until he entered Germantown Hospital on May 11, 1966, complaining of chest pains. The decedent underwent a lobectomy and a partial chest wall resection for carcinoma and was discharged for home convalescence on June 5, 1966. The deceased was readmitted to the hospital on July 2, 1966, and discharged August 5, 1966. The decedent died on September 11, 1966. The referee found that decedent died as a result of carcinoma of the lungs due to asbestos-caused lung cancer. The record reveals that the decedent died at his home, unattended by a physician. No autopsy was performed and the death certificate gives the cause of death as undetermined.

The records and x-ray films from decedent's two stays at Germantown Hospital were introduced as a basis for hypothetical questions to be propounded to claimant's medical expert. The medical expert initially gave his opinion that the decedent had asbestosis. The medical expert was next asked whether in his opinion *based on the fact that decedent had died of lung cancer,* the decedent's asbestosis caused the lung cancer which resulted in death. In response, the medical expert stated: "A. Far from any uncertainty, I feel very confident that Mr. Bambrick died of a carcinoma of the lung consequent upon *asbestos exposure.*" (Emphasis added)

Once again we are faced with insufficient evidence upon which to base a finding that the requirements of the statute have been met. Recovery is limited to death caused by asbestosis, not asbestos exposure.

In addition, there is another reason which bars claimant's recovery. Hypothetical questions must be based on matters which appear in the record and on facts warranted by the evidence. *DeFrank v. Sullivan*

*Trail Coal Co.,* 425 Pa. 512, 229 A. 2d 899 (1967). The record is devoid of any evidence upon which to base an assertion that decedent died of lung cancer. On cross-examination, the claimant's medical expert was asked, based on the medical information before him, and making no assumptions as to the cause of death, what caused the decedent's death. The medical expert replied that he did not know the cause of death, and that for all he knew, decedent could have been crossing the street when hit by a car and killed. Expert medical testimony is entitled to little or no weight when based upon insufficient facts. *Commonwealth v. Patskin,* 375 Pa. 368, 100 A. 2d 472 (1953). There is insufficient evidence upon which to base a finding that decedent died as a result of asbestosis.

With respect to the claim of Robert T. Utter, the judgment of the lower court is reversed, and the claim petition is dismissed.

With respect to the claim of Margaret R. Utter, the judgment of the court below is reversed, and the fatal claim petition is dismissed.

With respect to the claim of Alice Bambrick, the judgment of the court below is reversed, and the fatal claim petition is dismissed.

---

CONCURRING OPINION BY JUDGE BLATT:

I reluctantly concur in the majority opinion, although as Judge KRAMER comments in his dissent, it may well be that "the Legislature intended to confer benefits upon workers (and their families) who are totally disabled or killed from any disease, disorder or physical malfunction brought about or caused by their exposure to asbestos." Unfortunately, if the Legislature did so intend, and even if individual legislators may have so understood or might still so believe, the legislation adopted did not so provide.

The legislation in question here is the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, No. 264, as amended, 77 P.S. §1401(e) which provides that ". . . Compensation shall be payable . . . for total disability or death *caused by . . . asbestosis. . . .*" (Emphasis supplied). The Act does not refer to asbestos exposure, but merely to asbestosis, which is correctly defined in the majority opinion as "a pneumoconiosis resulting from the inhalation of asbestos fiber dust (hydrated magnesium silicate in fibrous form)." 5 Gordy-Gray, *Attorneys' Textbook of Medicine,* ¶205 .C.01 (3d Ed. 1970). The very competent medical witness for the claimants in these cases was very careful *not* to state that asbestosis was the cause of death in either case, and, without competent medical evidence to the effect that asbestosis, as distinct from merely asbestos exposure, *was* the cause of death, it seems to me that the clear language of the Act prohibits benefits.

It is my belief that the average legislator, like the average layman, is probably unacquainted with medical terms, and that many legislators involved in the adoption of this legislation may actually have believed that asbestosis and asbestos exposure were synonomous terms. In fact, however, they are not, and this Court must construe them according to their proper definitions. If the Legislature did make a mistake, as I am inclined to think it did, and if this legislation as adopted does not carry out the actual legislative intent, then the remedy lies with the Legislature and not with this Court.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully but vigorously dissent.

The decisional law of this Commonwealth requires that courts liberally construe the Occupational Disease

Act (Act), Act of June 21, 1939, P. L. 566, as amended, 77 P.S. 1201, et seq., in favor of the employee so as to effectuate the remedial and humanitarian purposes of the Act. *See Habovick v. Curtiss-Wright Corp.*, 207 Pa. Superior Ct. 80, 215 A. 2d 389 (1965); *Butler v. U. S. Steel Corp.*, 205 Pa. Superior Ct. 508, 211 A. 2d 35 (1965); *DeMascola v. City of Lancaster*, 200 Pa. Superior Ct. 365, 189 A. 2d 333 (1963).

This Court has held repeatedly that it will not disturb the findings of the Workmen's Compensation Board (Board) unless there has occurred a capricious disregard of competent evidence. We have said that the credibility of the witnesses and the weight to be accorded such testimony is within the prerogative and discretion of the Board. *See Stump v. Follmer Trucking Co.*, 4 Pa. Commonwealth Ct. 110, 286 A. 2d 1 (1972) and *Fesh v. American Steel and Wire Division, U. S. Steel Corp.*, 4 Pa. Commonwealth Ct. 84, 286 A. 2d 10 (1972). A reviewing court should not substitute its judgment of the credibility and weight of testimony and evidence for that of the duly authorized and legislatively directed finders of the facts, viz., the Board. *State Workmen's Insurance Fund v. Young*, 2 Pa. Commonwealth Ct. 423, 276 A. 2d 552 (1971).

The only issue raised by the appellants in this case is whether there was competent medical evidence to support a finding of a causal relationship between the exposure to asbestos and the actual cause of death. I have carefully reviewed the record in this case and have read the testimony of the expert witnesses several times. I am at a complete loss as to how the majority can hold that there was "no" or "insufficient" evidence to support the findings and conclusions of the Referee, the Board, and the Court below, all of which granted the benefits under the Act to the claimants.

My research leads me to believe that Dr. Irving J. Selikoff, the claimants' expert witness in all of the

cases here at issue, if not *the* leading expert, is certainly one of the world's leading authorities on the subject of asbestosis. Dr. Selikoff's testimony in the records of these cases is more than adequate to support the findings and conclusions reached in the adjudications. To prove my point, I will set forth a small portion of Dr. Selikoff's testimony which proves conclusively that the adjudication is supported by substantial evidence. For instance, after having been given the usual long hypothetical question, the Doctor was asked if he had an opinion whether Mr. Bambrick had asbestosis. His answer was: "Yes, sir, review of the pathological findings by Dr. Fite at the Germantown Hospital there is no doubt whatsoever that *this man had asbestosis*. . . . The morphologic contour and the iron contents of these structures indicate beyond significant doubt their asbestotic nature. What Dr. Fite is describing are asbestos bodies and these are characteristic tissue reaction to the presence of asbestos fibers." (Emphasis added) (R. 41a-42a)

It is true as stated by the majority that Dr. Selikoff gave as his opinion at R. 43a: "Far from any uncertainty I feel very confident that Mr. Bambrick died of a carcinoma of the lung consequent upon *asbestos exposure*." (Emphasis added) We do no harm to the reputation of claimants' medical expert by reviewing his testimony *in its totality*, and indeed it is our judicial duty to so comport. The Doctor then went on and in great detail explained how the asbestos needle-like fibers are inhaled into the lungs and through the movement of the lung become lodged in the peripheral walls of the lungs for the life of the individual. In great detail he explained how workers exposed to sufficient quantities of asbestos fibers may be disabled or eventually killed. He proved this graphically with many statistics. He talked about the unique location

of asbestos fibers in the lungs of such workers. He stated such things as: "There is a peculiarity about lung cancer associated with asbestos exposure however, in that it occurs typically peripherally in the outer part of the lung." (R. 51a)

The record clearly shows that Mr. Bambrick had that peculiar kind of cancer which appeared in the peripheral parts of the lung. To Dr. Selikoff this was conclusive proof that Mr. Bambrick's lung cancer was directly related to his asbestos exposure. He stated: "The only thing I know from the information that I have is that Mr. Bambrick had a lung cancer associated with asbestos. . . ." (R. 56a) Dr. Selikoff even went further to show that an asbestos worker who smoked cigarettes regularly had an increased incident of lung cancer, nine times greater than the general population, and many times greater than a nonsmoking asbestos worker. Mr. Bambrick was a cigarette smoker.

When asked to define asbestos, he stated: "There is no such thing. Asbestos is a generic term to describe a group of fibrous minerals. There are a number of such minerals including chrysotile, amosite, crocidolite, anthrophyllite, and finally tremolite. . . ." (R. 76a) Dr. Selikoff even went on and pointed out that many death certificates will show as the cause of death some cause other than asbestosis when in fact the cause of death is directly related to the asbestos fibers in the lung. My research discloses that exposure to asbestos could result in death which could be diagnosed by some physicians as bronchogenic carcinoma, pleural mesothelioma, peritoneal mesothelioma, carcinoma of the colon, carcinoma of the rectum, carcinoma of the stomach, coronary heart disease, congestive heart failure, bronchopneumonia, encephalitis, etc. In this same vein Dr. Selikoff pointed out that many times a doctor, searching for an "easy way out," will state on a death certifi-

cate that the cause of death was "coronary insufficiency." Should a physician's convenience or erroneous pronouncement deprive an asbestos worker of benefits intended by the Legislature?

It is difficult for this writer to conceive of more substantial testimony from which the Board and the lower court could have determined that there existed a causal relationship between the claimant's asbestosis and his ultimate disability and death.

Turning now to the Utter case, Dr. Selikoff, as already noted herein, was also the claimant's expert medical witness. In that case following the hypothetical question, Dr. Selikoff was asked for his opinion and he stated unequivocally: *"Mr. Utter had asbestosis."* (Emphasis added) (R. 96a) In the very next answer he emphatically stated that there was a causal relationship between the asbestosis and the cause of death. It is true as the majority pointed out that when asked for his opinion, he again said: "In my opinion there can be very little doubt that Mr. Utter's death was due to lung cancer causally related to his *asbestos exposure."* (Emphasis added) (R. 97a) He went on and said: "[T]here is an extraordinary association between death due to carcinoma of the lung and industrial employment as an asbestos worker. . . . [T]hat additional information made available very recently makes this association even stronger in the instance of an asbestos worker who smokes cigarettes. . . ." (R. 98a) In describing his review of the medical records in this case, he stated: "The diagnosis on these films would be pulmonary asbestosis and carcinoma of the lung peripheral in location." (R. 100a) In speaking of Mr. Utter's medical records, Dr. Selikoff said that there was a significant finding of asbestos in the lung. (R. 102a) He noted from the surgery operation records that asbestosis and carcinoma were found during the

operation, located in the "right upper lobe" at the periphery of Mr. Utter's lung. Dr. Selikoff described what he meant by "peripheral carcinoma" and related that dreaded disease to asbestos exposure. Once again the record in the Utter case contains more than adequate substantial evidence from which the Board and the Court below could have granted benefits to the claimant.

Although this writer is no medical expert, the record in this case permits me to conclude that expert medical testimony declaring a disability or death directly resulting from asbestosis would be a rare thing indeed. The medical evidence presented leaves one with the conclusion that exposure to asbestos fiber causes other physical malfunctions, disorders or diseases, which are the ultimate cause of death. It seems clear that the presence of the asbestos needle fibers in the peripheral section of the lung causes carcinoma of a special type, heart failure and pulmonary disorders. This being the fact it was quite logical for Dr. Selikoff to state that the cause of death was lung cancer causally related to "asbestos exposure."

The statutory language of the Act, at 77 P.S. 1208, states:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases: . . .

"(1) Asbestosis in any occupation involving direct contact with, handling of, or exposure to the dust of asbestos." (Emphasis added)

That statutory definition, together with the direction of precedent that we are to liberally construe this statute for the benefit of the worker, leads me to the conclusion that the opinion of the lower court should be affirmed. To hold otherwise would frustrate the legislative purpose of the General Assembly in providing compensation benefits to those workers of this

Commonwealth who have been exposed to asbestos in their employment. As I read the majority opinion, it would be a rare case where an asbestos worker in this Commonwealth would be able to realize benefits under the Act, because my research indicates it would be rare that medical experts would testify that the actual cause of death was asbestosis. My reading of the cases and the statute leads me to believe that the Legislature intended to confer benefits upon workers (and their families) who are totally disabled or killed from any disease, disorder or physical malfunction brought about or caused by their exposure to asbestos. The majority opinion defeats that legislative purpose. I would affirm the court below.

Judge CRUMLISH, JR. joins in this dissenting opinion.