## Sabatini *v.* Affiliated Food Distributors, Inc., et al.

Argued September 13, 1972, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three.

*Raymond F. Lowery,* for appellant.

*Ernest J. Gazda, Jr.,* for appellee.

OPINION BY JUDGE KRAMER, October 20, 1972:

This is an appeal filed by Affiliated Food Distributors, Inc. (Affiliated), from an Order of the Workmen's Compensation Board (Board), dismissing Affiliated's appeal to it from an Award granted by an adjudication of a Referee of the Board to Stella Sabatini (Sabatini), widow of Stephen Sabatini (decedent). The Referee's Award granted to Sabatini benefits for both (1) that period prior to her husband's death on April 8, 1969, together with all hospital and medical expenses incurred prior to that date, and in addition (2) workmen's compensation death benefits after his death.

For approximately two years prior to February 19, 1968, the decedent was employed by Affiliated as a warehouseman. The decedent's work entailed the lifting and moving of boxes and crates and other materials in his employer's warehouse. On that date, February 19, 1968, while at work on a platform near an open door, the decedent who had "sweated up—a little overheated due to the work," became exposed to a draft of very cold air (the outside temperature being near zero degrees Fahrenheit) from the opened door. Decedent stated that the cold air struck him in the face, and later, that same day, at about 9:00 P.M. as he was eating his supper, he noticed that he was developing a paralysis and numbness about his face, which became progressively worse. Decedent continued his work until February 27, 1968, at which time he consulted his family physician who informed him that he had contracted "Bell's palsy." The record indicates that the decedent had been in apparent good health prior to the above described incident.

As a result of this incident, a workmen's compensation agreement was executed between the decedent and Affiliated on March 28, 1968, under which Affiliated acknowledged that the decedent had experienced a com-

pensable accident, resulting in Bell's palsy to the left side of his face. Affiliated agreed to pay decedent compensation at the rate of $52.50 per week, beginning March 5, 1968, and in addition agreed to pay all medical and hospital expenses "subject to the limits of time and amounts provided by the Pennsylvania Workmen's Compensation Act and subject to modification or termination by Supplemental Agreement, order of the Workmen's Compensation Board or Final Receipt." Decedent received payment under this agreement from March 5, 1968, to September 4, 1968, after which later date decedent returned to work. Because of his continuous deteriorating condition decedent again was forced to leave his employment; and on September 20, 1968, decedent and Affiliated entered into a supplemental agreement, under which it was further agreed "that on and after 9-12-68 compensation shall be payable to the said employee at the rate of $52.50 per week for indefinite weeks; or if the future period of disability is uncertain, then to continue at said rate until terminated by further supplemental agreement, order of the Workmen's Compensation Board or Referee, or by final receipt." Affiliated voluntarily stopped payment to decedent on December 23, 1968.

Decedent's physical condition continued to deteriorate and after examination by several doctors and two confinements in a hospital, decedent's disability was finally determined to be a cerebral vascular accident with hypertension. The record is quite clear that the decedent suffered two or more strokes between February 19, 1968, and his death on April 8, 1969.

Based on the record made before him, the Referee found that the decedent died as a result of the injuries he experienced on February 19, 1968. In affirming the Referee, the Board reached an additional conclusion stating that because of the two agreements between Af-

filiated and decedent, there was a "formal admission" by Affiliated and its insurance carrier of the happening of the accident to the decedent on February 19, 1968, and the total disability, together with the nature of the injury resulting from that accident.

Affiliated, in this appeal, contends that the execution of the compensation agreement with the deceased did not bar it from contesting the Fatal Claim Petition of the widow of the deceased; and, secondly, that the finding by the Referee and the Board of a causal connection between the accident and the decedent's death is not supported by substantial evidence.

The scope of review of this Court has been recently set forth by the Legislature in the Act of February 8, 1972, P. L.    (Act No. 12), where in Section 427 it is stated: "In any appeal to the Commonwealth Court, the scope of review shall be as provided in section 44, act of June 4, 1945 (P. L. 1388), known as the Administrative Agency Law." (71 P.S. §1710.44). That section in pertinent part states: "The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency.  After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence."

In recent cases before this Court we have held that where the Board has made an award in favor of the claimant we must look to determine if there is substantial evidence to support the findings of the Board, giving to the claimant, who has the award, the benefit of the most favorable inferences deducible from the testimony. *See Bambrick v. Asten Hill Manufacturing Co.,* 5 Pa. Commonwealth Ct. 664, 291 A. 2d 354 (1972)

and *Stump v. Follmer Trucking Co.,* 4 Pa. Common-
wealth Ct. 110, 286 A. 2d 1 (1972). Furthermore, we
recently stated that substantial evidence should be con-
strued to confer finality upon an administrative decision
on the facts when, upon an examination of the entire
record, the evidence, including the inferences therefrom,
is found to be such that a reasonable man, acting rea-
sonably, might have reached the decision; but on the
other hand, if a reasonable man, acting reasonably,
could not have reached the decision from the evidence
and its inferences, then the decision is not supported
by substantial evidence and is to be set aside. *See A. P.
Weaver and Sons v. Sanitary Water Board,* 3 Pa. Com-
monwealth Ct. 499, 284 A. 2d 515 (1971).

The record in this case clearly shows that the dece-
dent's family doctor made a "misdiagnosis," for all four
of the doctors who testified in this case (one doctor tes-
tified for the claimant and three testified for Affiliat-
ed) agreed that the decedent suffered from general ar-
teriosclerosis, and that the decedent died of a cerebral
thrombosis due to a thrombus of the right carotid ar-
tery. All three of Affiliated's doctor witnesses agreed
that the decedent's symptoms would lead a medical ex-
pert to believe that decedent had Bell's palsy.

In any event Affiliated, with full knowledge of all
the then available facts, entered into a compensation
agreement with the decedent, and later into a supple-
mental agreement with him, whereby Affiliated agreed
to pay the benefits set forth in those agreements. Al-
though Affiliated, at sometime prior to decedent's
death, petitioned the Board for the termination of the
agreement, that petition was withdrawn before dece-
dent's death.

Our courts have passed upon the legal effect of a
compensation agreement. In the case of *Fehr v.
Y.M.C.A. Pottsville,* 201 Pa. Superior Ct. 107, 192 A.

2d 143 (1963), the court stated: "The compensation agreement amounts to a formal admission by the employer and the insurance carrier of the claimant's employment; the happening of the accident; and the nature of the injuries resulting from the accident on the date stated while in that employment; and the total disability as a result of those injuries." 201 Pa. Superior Ct. at 112, 192 A. 2d at 146.

In view of the fact that Affiliated had a right to file (Section 413 of the Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. 771), and have a hearing on a petition to terminate an agreement for compensation, coupled with the fact that Affiliated filed such a petition and then thereafter voluntarily withdrew it, precludes Affiliated from now challenging any of the payments made or claimed under that agreement to the date of decedent's death. Affiliated is liable under the terms of its agreement with the decedent, even in the face of the record made in this case, whereby the exact nature of the decedent's injury may have been "misdiagnosed" by all of the doctors at the time the agreements were executed. Furthermore, in view of the fact that the supplemental agreement did not change any of the terms of the original agreement with reference to medical and hospital expenses, all of those expenses, together with the weekly compensation payments agreed to, which were not paid, must be paid to the widow to the date of decedent's death, April 8, 1969.

The only remaining question, therefore, is whether the widow is entitled to any compensation benefits under her Fatal Claim Petition. The Referee found that the decedent's death was a result of "'an accidental injury" the decedent experienced on February 19, 1968. The Referee stated that the death was "a result of a thrombus of the internal carotid right artery."

It is very difficult, from the wording of the Board's opinion to determine, with any specificity, whether the Board relied upon the cold draft of air or an overexertion as the cause of decedent's fatal disability. For example the Board stated ". . . that this condition, whatever it was, caused, his death." After a careful review of the Board's opinion, we conclude that the Board relied primarily on the testimony of the widow's expert to support its conclusion that the thrombosis was caused by "extra work, overload of lifting and so forth" exerted by the decedent on February 19, 1968.

We have read and reread the entire record in this case. In doing so we have attempted to give the widow claimant the benefits of every inference. However, there is nothing in this record which described the work history of the decedent. We have no way of knowing whether or not, on February 19, 1968, the decedent was involved in any unusual strain or extraordinary exertion over and above that which he normally experienced in his every day work pattern as a warehouseman for Affiliated. The only testimony in the record is that of the claimant's doctor who was not present on the warehouse platform on February 19, 1968, or any other date. The doctor's testimony does not relate or refer to specific statements by the decedent that he had done any unusual work out of the ordinary work pattern. The only other evidence is a handwritten statement by the decedent in which he said: "[O]n February 19, 1968 I was working and the weather was cold almost 0° outside—I got sweated up—a little overheated due to the work. The mechanic was gassing up the truck so the doors were open for a certain length of time. The cold air came into the warehouse and cold air struck me on the face." We conclude that this evidence is not sufficient substantial evidence to meet the burden of proving that the cause of decedent's death was the result of

an accident within the meaning of that term in the Workmen's Compensation Law. As was stated in the case of *Pavlik v. Harmar Coal Co.,* 191 Pa. Superior Ct. 283, 156 A. 2d 565 (1959) the claimant may not rely upon expert opinion based upon a continuity of events which had not been established on the record. In the case of *Cope v. Philadelphia Toilet Laundry and Supply Co.,* 167 Pa. Superior Ct. 205, 74 A. 2d 775 (1950), our Superior Court stated: "The assumed facts upon which the doctor's professional opinion was based were not established by any evidence, and such opinion of a medical expert is not proof of an accidental injury. . . . The fact that the deceased was stricken while performing his ordinary work without overexertion would be in itself insufficient proof of an accident. An accident cannot be inferred merely from the physical collapse of an employe." 167 Pa. Superior Ct. at 208-209, 74 A. 2d at 777. In that case the decedent died from a coronary thrombosis several months after having been stricken while lifting bundles weighing from 15 to 40 pounds in the course of his usual employment. The court clearly stated that the burden was on the claimant to prove all of the elements of her case and that if there was no proof of overexertion or unusual exertion on the part of the deceased in performing his usual duties, there could not be an award for compensation benefits. There can be little doubt that for the claimant in a fatal claim petition to be entitled to a compensation award she must bear the burden of proving a causal relationship between the injury and the death. *See Everitt v. Baker Refrigerator Co.,* 197 Pa. Superior Ct. 611, 180 A. 2d 114 (1962).

"To secure compensation there must of course, be both an accident and an injury. An injury cannot be inferred simply because there was an accident." *See Dennis v. Jarka Corporation,* 182 Pa. Superior Ct. 498, 503, 127 A. 2d 803, 805 (1956).

As it relates to the Fatal Claim Petition, the widow's contention that the employer (Affiliated) is bound by its admission of the fact that decedent suffered an accident on February 19, 1968, cannot be upheld. We have already held in this opinion that the claimant is entitled to full and complete payment of the benefits agreed to until the date of death. However, the Fatal Claim Petition is an entirely different matter and the widow claimant had to meet the burden of proving that the accident admitted by Affiliated was in fact the cause of her husband's death. This she failed to do. The Workmen's Compensation Law at 77 P.S. 541 very clearly states: "Should the employe die from some other cause than the injury, the liability for compensation shall cease." The flaw in the widow claimant's presentation in this case is the lack of evidence tying the actual cause of death to the accident which occurred on February 19, 1968. As we have already pointed out the speculation of the widow claimant's doctor cannot be used as the basis for such a causal connection. In reaching our conclusion, we emphasize that this is not a matter of passing upon the credibility of witnesses or interposing our interpretation of conflicting expert medical testimony. It is, however, a determination that there is not sufficient evidence under the substantial evidence test to support the conclusion of the Referee and the Board that the widow claimant met her burden of proving a causal connection between the events of February 19, 1968, and the death of the decedent on April 8, 1969. Based upon the above discussion, we

#### ORDER

AND Now, this 20th day of October, 1972, the Affiliated Food Distributors, Inc., and its workmen's compensation insurance carrier are directed to pay to Stella Sabatini, widow of Stephen Sabatini, deceased, compen-

sation due the decedent in his lifetime at the rate of $52.50 per week from December 24, 1968, to April 8, 1969. Deferred payments of compensation shall bear interest at the rate of 6% per annum from the due date thereof. Affiliated Food Distributors, Inc., or its workmen's compensation insurance carrier are also ordered to pay to Dr. C. J. Morosini of 1515 Pittston Avenue, Scranton, Pennsylvania, the sum of $1,410.00, Dr. J. P. McGowan, Mercy Hospital, Scranton, Pennsylvania, the sum of $15.00, and Mercy Hospital, Scranton, Pennsylvania, the sum of $1,901.50; in all other respects the Order of the Workmen's Compensation Board in the above noted case is reversed and the Fatal Claim Petition of Stella Sabatini is hereby dismissed.