Duquesne Brewing Company, et al. *v.* Dyda, et al.

Argued April 5, 1973, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Roy F. Walters, Jr.,* with him *Brandt, McManus, Brandt & Malone,* for appellant.

*Alexander J. Pentecost,* for appellee.

OPINION BY JUDGE KRAMER, April 27, 1973:

This is an appeal by the Duquesne Brewing Company (Duquesne) from an order of the Workmen's Compensation Appeal Board (Board) dated October 26, 1972, affirming the referee's granting of a workmen's compensation award to Joseph M. Dyda (Dyda).

Dyda worked for Duquesne approximately 27 years. On April 16, 1969, while working in the capacity of a kettleman, he was in a large bin cleaning corn which had gathered around the edges of the bin. The bin itself is 65 feet high and approximately 25 by 30 feet in area. Shortly after entering the bin, he experienced a great deal of difficulty breathing. Thereafter, he went out of the bin and procured a spotlight. With the aid of the spotlight, he noticed a mist in the bin. Dyda had been in the bin approximately 15 minutes. In his own words, he stated that he started "choking up and coughing and like you get a watery nose and you cough up

like you have to regurgitate. . . ." He went to the company dispensary and reported the incident to the nurse and informed his supervisor. After getting some fresh air, he attempted to return to work. Shortly thereafter, he began vomiting and was taken to South Side Hospital.

At the hospital, Dyda was told by an intern on duty to get plenty of fresh air, drink plenty of liquids and not to return to work. Nonetheless, he returned to work and continued to work until December 1, 1969, at which time he became totally disabled. Thereafter, he returned to work on February 1, 1970, and continued working until May 14, 1970, at which time total disability returned. Dyda indicated that since the date of the incident, April 16, 1969, he had continually experienced coughing spells, shortness of breath, dizziness, wheezing and congestion. His condition was diagnosed as asthmatic bronchitis and was concluded to be a manifestation of an organic problem due to the exposure to various fumigants and corn husking fumes.

Several intermittent days of hearings were held before Referee Jerome M. Meyers. At the hearings, Dyda testified in his own behalf and although he was examined by several doctors, the only medical evidence received was the deposition of Dr. Murray Sachs. Based on the history given to him and his examination of Dyda, Dr. Sachs concluded that Dyda's condition was a result of a limited exposure to vapors from a fumigant used to clean a conveyer adjacent to the bin in which Dyda was working, and dangerous nitrogen oxide fumes from the corn huskings present in the bin.

Duquesne offered no expert medical testimony or evidence. Duquesne's sole witness was David J. Radzanowski, Duquesne's Director of Sanitation and Quality Control. Mr. Radzanowski's responsibilities include the direct supervision of all fumigating procedures, and he indicated that the last fumigating procedure prior to

April 16, 1969 (the date Dyda experienced difficulties) was on March 29, 1969. Mr. Radzanowski was present in the brewery on the date in question and was advised of Dyda's complaint. Approximately 20 minutes after Dyda's exposure in the bin, Mr. Radzanowski used a Halide Detector to check the bin for toxicity. He also testified that the bin appeared to be normal and that there were no corn huskings, as distinguished from loose corn. After conducting standard scientific tests on the samples he collected in the bin at that time, Mr. Radzanowski concluded that the bin was free from any fumes or vapors which could be derived from the fumigant used, on March 29, 1969, to clean the conveyer adjacent to the bin. It should be pointed out, however, that on cross-examination, Mr. Radzanowski admitted that although unlikely, it is possible that a pocket of gas could have been present when Dyda was working in the bin, and subsequently, during the 20 minutes or so that elapsed before he conducted his tests, the bin could have been cleared by the ventilation system. He also admitted, again as extremely unlikely the possibility of a dangerous level of nitrogen oxide emanating from the corn present in the bin.

Subsequent to the hearings, but prior to issuing an adjudication, Referee Meyers left office. Referee Fahey was assigned the case, and based on the transcript of the testimony taken before, and the evidence received by, Referee Meyers, together with Dr. Sachs' deposition, he found for Dyda. Duquesne took an appeal to the Board. The Board chose to rely on the testimony of Dyda and the uncontradicted testimony of his medical expert, Dr. Sachs. Therefore, it affirmed the findings, conclusions and order of the referee.

Duquesne's appeal to this Court presents two issues. First, Duquesne alleges that the findings and conclusions of the Board are not supported by substantial evidence and that the Board capriciously disregarded

the testimony of Mr. Radzanowski. Second, Duquesne contends that it was improper for Referee Fahey to decide the case on the testimony taken before Referee Meyers.

With regard to its second contention, Duquesne relies on *Wilder v. Jones & Laughlin Steel Corporation,* S. A. 685 of 1971, a recent decision of the Allegheny County Court of Common Pleas, wherein the same issue was presented. There, the court, having determined that the referee who ultimately decided the issues should have heard the testimony present, remanded the case. At the time the case before us here was argued, *Wilder* was on appeal to this Court. Our recent opinion in *Wilder v. Jones & Laughlin Steel Corporation,* 683 C.D. 1972. 8 Pa. Commonwealth Ct. 505, 304 A. 2d 537 (1973), reverses the lower court. The rationale we used in *Wilder* controls here as well. Initially, it should be pointed out that Duquesne had not complained of the change in referees prior to its appeal to this Court. Furthermore, there is statutory authority which supports the action of the Board. *See* Section 415 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §851. *See also Bogowich v. State Workmen's Insurance Fund,* 105 Pa. Superior Ct. 366, 161 A. 623 (1932).

We now turn to Duquesne's first contention, i.e., that the findings and conclusions of the Board are not supported by substantial evidence and that the testimony of Mr. Radzanowski was capriciously disregarded.

In Workmen's Compensation cases when the claimant has been awarded compensation, our scope of review is limited to a determination as to whether there is substantial evidence to support the findings and conclusions of the Board. *See Nash v. Sandnes' Sons, Inc.,* 6 Pa. Commonwealth Ct. 403, 295 A. 2d 615 (1972); *Bambrick v. Asten Hill Manufacturing Company,* 5 Pa. Commonwealth Ct. 664, 291 A. 2d 354

(1972). It is for the Board to determine questions of credibility and the weight it be given to the evidence. *See Field v. Carson Valley School,* 7 Pa. Commonwealth Ct. 116, 299 A. 2d 690 (1973); *Drevitch v. Beverly Farms, Inc.,* 7 Pa. Commonwealth Ct. 1, 297 A. 2d 541 (1972). During appellate review, the party victorious below is to be given the benefit of the most favorable inference deducible from the evidence. *See Sabatini v. Affiliated Food Distributors, Inc.,* 6 Pa. Commonwealth Ct. 470, 295 A. 2d 845 (1972); *Nash v. Sandnes' Sons, Inc., supra.*

As hereinbefore stated, the Board determined that based on the testimony of the claimant Dyda, and the uncontradicted testimony of his expert medical witness, that it was "satisfied that Claimant met his burden of proof and established sufficient evidence to reach the findings of fact, conclusions of law and order as determined by the Referee." Even though we agree with Duquesne that there is evidence in the record to support its position, this does not negate the fact that there is also substantial evidence in the record to sustain the findings of the Board. In light of the aforementioned guidelines, we must and do affirm the order of the Board. We therefore

ORDER

AND NOW this 27th day of April, 1973, it is hereby ordered that judgment be entered in favor of Joseph M. Dyda and against Duquesne Brewing Company and/or Pennsylvania Manufacturers' Association Insurance Company for compensation for total disability at the rate of $60.00 per week beginning from December 1, 1969 and continuing up to and including January 31, 1970, after which time compensation shall be suspended for the period from February 1, 1970 up to and including May 13, 1970, when compensation shall be again reinstated at the rate of $60.00 per week from May 14, 1970 and continuing for a period indeterminate into the future, all within the terms and limits of the Penn-

sylvania Workmen's Compensation Act, including legal interest on deferred installments, and all statutory medical expenses due to the subject accident.