[J-88-2024] [MO: Donohue, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| KRISTINA STEETS, (DECEASED), | : | No. 3 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 512 CD |
| | : | 2022 entered on May 8, 2023, |
| v. | : | Affirming the Order of the Workers' |
| | : | Compensation Appeal Board at No. |
| | : | A21-0974 entered on April 26, 2022. |
| CELEBRATION FIREWORKS, INC. | : | |
| (WORKERS' COMPENSATION APPEAL | : | ARGUED:  November 19, 2024 |
| BOARD), | : | |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                             **DECIDED:  May 30, 2025**

In general, a workers' compensation claimant's estate is not entitled to payments that the deceased claimant would have received had he or she survived.  That said, when a claimant dies *due to a work injury*, certain surviving relatives of the deceased worker may have claims of their own against the employer for fatal claim benefits.  Such benefits are payable "in order to vindicate the [Workers' Compensation] Act's purpose of providing maintenance to the deceased employee's dependents."[1]  Fatal claim benefits are governed by Section 307 of the Act, which lists the specific relatives who are entitled to

---

[1]     DAVID B. TORREY, ANDREW E. GREENBERG, & LEE FIEDERER, PENNSYLVANIA WORKERS' COMPENSATION LAW & PRACTICE § 7:70 (4th ed. 2021).

fatal claim benefits, and then assigns a percentage of the deceased's wages to which each relative is entitled.[2]

In the context of fatal claims, the surviving relative's claim for benefits is distinct from the claim that the deceased employee had against the employer in the first instance. In other words, the surviving dependents do not inherit the deceased worker's right to benefits; rather, they "possess a claim which is 'independent' of that of the worker, and which is not, further, conceptualized as 'derivative' of the claim of the worker."[3]

Section 307 tells us who is eligible to receive benefits when the worker dies from a work injury.[4] But what happens when a claimant receiving workers' compensation benefits dies from a cause unrelated to his or her work injury? That question is answered by Subsection 306(g) of the Act, entitled "Payments to survivors in event of death from

---

[2] *See* 77 P.S. § 561. For example, if a claimant leaves behind a spouse and no children, the spouse is entitled to 51% of the deceased claimant's wages (up to a maximum of the statewide average weekly wage). *Id.* § 561(2). If the claimant leaves behind one child and no spouse, the child's guardian is entitled 32% of the deceased claimant's wages. *Id.* § 561(1)(a). And if the claimant leaves behind two children and no spouse, the guardian of the children is entitled to 42% of the deceased claimant's wages. *Id.* § 561(1)(b).

[3] TORREY, GREENBERG, & FIEDERER, *supra* note 1, § 7:70 ("The rights of the fatal claim claimants accrue as of the date of the death of the employee."). This rule "has several practical implications," the most important being that a surviving relative seeking fatal claim benefits "must establish a complete *prima facie* case on all bases, and the fact that the employee may have received benefits during his or her lifetime does not automatically render the subsequent death claim payable." *Id.* "This is so notwithstanding the fact that it may seem obvious that the death which follows the original injury is a natural result of the same." *Id.*

[4] The Majority suggests that Section 307 applies even if the worker dies from a cause other than the work injury, but that is not correct. *See* Majority Opinion at 38 ("Section 307 provides survivor benefits regardless of the type of benefits and regardless of the cause of death."); *id.* at 39 ("Section 306(g) does not operate to render Section 307 inapplicable to circumstances where the death is not work-related.").

cause other than injury."[5]   Originally, Subsection 306(g) provided that, "[s]hould the employee die from some other cause than the injury, the liability for compensation shall cease."[6]   Then, in 1972, the General Assembly struck "the liability for compensation shall cease" from Subsection 306(g) and added language stating that, when a specific loss[7] claimant dies from a cause unrelated to the work injury, the employer must continue paying to the claimant's dependents the specific loss benefits that the claimant was awarded but never fully collected prior to death.[8]   The 1972 legislation remains in effect today, with Subsection 306(g) stating as follows:

---

[5]     77 P.S. § 541.

[6]     77 P.S. § 541 (1971); *see Affiliated Food Distribs, Inc. v. Sabatini,* 295 A.2d 845, 850 (Pa. Cmwlth. 1972) (quoting the pre-1972 statute).

[7]     Specific loss claims occur when a worker loses the use of an appendage or suffers disfigurement or hearing loss.  For specific loss claims, the Act list various body parts and assigns a corresponding number of "weeks" of compensation to which a claimant who loses that body part is guaranteed.  For example, a claimant who loses a hand is entitled to 335 weeks of compensation, a claimant who loses an eye is entitled to 275 weeks of compensation, and a claimant who loses a thumb is entitled to 100 weeks of compensation.  77 P.S. §§ 513(1), (7), (9).  The legislature's goal in creating this schedule of awards "was to account—however crudely—for projected loss of earning power." TORREY, GREENBERG, & FIEDERER, *supra* note 1, § 7:4; *accord Romansky v. Shalala*, 885 F. Supp. 129, 131 (W.D. Pa. 1995) (explaining that the General Assembly intended "to create an irrebuttable presumption that the permanent injuries listed in section 306(c), by their very nature, cause the claimant to suffer a disability that results in a fixed loss of earning power").

       When a claimant is entitled to *both* total disability benefits and specific loss benefits, he or she can collect the total disability benefits for as long as possible before the specific loss benefits kick in.  In other words, when a claimant sustains multiple distinct injuries, only some of which are specific losses, payment of specific loss benefits does not begin until after the claimant's entitlement to total disability payments ends.  77 P.S. § 513(25) ("Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries . . . the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries[.]").

[8]     77 P.S. § 541.

**Payments to survivors in event of death from cause other than injury**

Should the employe die from some other cause than the injury, [specific loss] payments of compensation to which the deceased would have been entitled to under section 306(c)(1) to (25) shall be paid to the following persons who at the time of the death of the deceased were dependents [] and in the following order and amounts:

(1) To the surviving widow or widower if there are no children under the age of eighteen.

(2) To a surviving widow or widower and a surviving child or children in which event the widow or widower shall receive one-half and the surviving child or children shall receive the other half.

(3) To a surviving child or children if there is no surviving widow or widower.

(4) If there is no surviving widow or widower and no surviving child or children of the deceased then to that dependent or those dependents named in clause 5 of section 307.

(5) If there are no persons eligible as named above or in those classes then to those persons who are named in clause 6 of section 307.

(6) When such compensation is paid to dependents above named, compensation shall not cease even though the person receiving the payments ceases to be a dependent as defined in section 307.

(7) If there be no dependents eligible to receive payments under this section then the payments shall be made to the estate of the deceased but in an amount not exceeding reasonable funeral expenses as provided in this act or if there be no estate, to the person or persons paying the funeral expenses of such deceased in an amount not exceeding reasonable funeral expenses as provided in this act.[9]

To reiterate, the Act previously stated that "liability for compensation shall cease" whenever the employee dies from causes unrelated to the work injury. The General Assembly then amended that provision to say that, whenever the employee dies from

---

[9]   77 P.S. § 541.  The list of dependents who are entitled to these posthumous specific loss payments notably mirrors the list of dependents who are entitled to fatal claim benefits under Section 307 when the claimant dies due to the work injury.

causes unrelated to the work injury, the worker's dependents should be paid any specific loss benefits that the decedent would have collected in the future had the decedent survived. Again, this is only the case when the employee dies from causes unrelated to the work injury. When the worker dies due to the work injury, Subsection 306(g) does not apply, but qualifying dependents may be entitled to fatal claim benefits under Section 307.

Under both Section 307 and Subsection 306(g), only the enumerated dependents are entitled to post-death compensation payments. When a claimant dies without any dependents, the employer's liability for future payments of compensation is limited to paying funeral benefits.[10]

Given the plain language of Subsection 306(g), the Commonwealth Court consistently has declined to apply the provision in cases where the claimant dies because of the work injury. In *Estate of Harris v. W.C.A.B.*,[11] for example, the intermediate court explained that:

> Section 306(g) of the Act expressly limits the survival of specific loss benefits to a situation where death is "from some other cause than the injury." 77 P.S. § 541. Under the statutory construction principle *expressio unius est exclusio alterius*, we must find that because the General Assembly conditioned payment of specific loss benefits on a death by cause other than the work injury that it intended to exclude the alternative, *i.e.*, death by the work injury. There is a sound reason for this canon of construction; without it, the Act would have been twice as long because its drafters would have been required to couple every declarative sentence with its obverse.[12]

The *Estate of Harris* Court's interpretation of Subsection 306(g) was correct. The present argument for reinterpreting Subsection 306(g) is no more persuasive than the

---

[10]    77 P.S. § 541(7); *id.* § 561(7).

[11]    845 A.2d 239 (Pa. Cmwlth. 2004).

[12]    *Id.* at 244 (cleaned up); *accord Burns Int'l Sec. Servs., Inc. v. W.C.A.B. (Crist)*, 469 A.2d 336, 338 (Pa. Cmwlth. 1984) ("[A] prerequisite to payment of specific loss payments to survivors is that the claimant's death was from a cause other than the injury.").

one that the Commonwealth Court rejected in *Estate of Harris* two decades ago.[13] Contrary to the plain language of Subsection 306(g), the Majority concludes that Kristina Steets' estate is entitled to receive the specific loss benefits that Steets was awarded but never collected. The Majority bases this holding on Section 410 of the Act, but Section 410 has no application here.

While both Section 307 and Subsection 306(g) give dependents rights to *future* compensation after the claimant dies, Section 410 does not. Indeed, Section 410 is found in an entirely different chapter of the Act (titled "procedure"), and it states merely that, whenever a claimant's case is adjudicated after his or her death, any benefits owed for periods prior to the claimant's death shall be paid to the claimant's dependents or estate.

> If, after any injury, the employer or his insurer and the employe or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act, the employe or his dependents may present a claim petition for compensation to the department.
>
> *In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent.*[14]

Forcing the facts of this case into a clearly inapplicable statutory provision, the Majority claims that, because Steets died while her employer's appeal of her specific loss award was still pending in the Commonwealth Court,[15] her estate is entitled to the specific

---

[13] Brief for Steets' Estate at 11 (arguing that Subsection 306(g) merely "reflects the General Assembly's intent to award benefits to workers regardless of whether they die from their work injuries or some other cause").

[14] 77 P.S. § 751 (emphasis added).

[15] As the Majority explains, Steets began receiving total disability benefits after the accident, but she subsequently petitioned to amend the notice of compensation payable to add specific losses in addition to her other injuries. The WCJ granted Steets' petition, and Celebration Fireworks' appeal of that decision was pending in the Commonwealth Court when Steets died.

loss benefits that she never collected during her lifetime. In so concluding, the Majority holds that Section 410 provides an independent basis, apart from Subsection 306(g), for survivors and estates to receive specific loss installments that never came due before the claimant died. The Majority is incorrect.

Section 410 concerns monies that the employer *owed* to the claimant prior to the claimant's death yet never paid because the compensability of the claim was still being litigated. To illustrate, when a WCJ determines that a contested claim is compensable, he or she will award the claimant a lump-sum representing the compensation that the claimant should have received while the employer was contesting the case. In that circumstance, if the claimant "die[s] before the final adjudication of his claim," the claimant's dependents or estate will be entitled to "the amount of compensation due such claimant to the date of death" under Section 410.[16]

Section 410 has no application here because the 840 weeks of specific loss benefits to which Steets' estate argues it is entitled were not "due" to Steets "to the date of death." Steets was receiving total disability benefits when she died, and although she was also entitled to specific loss benefits, she could not receive both at the same time.[17] The 840 weeks of specific loss benefits therefore were not set to commence until Steets' total disability ceased, which did not happen before her death. Thus, none of the specific

---

[16]     77 P.S. § 751.

[17]     *Id.* § 513(25) ("Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries . . . the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries[.]").

loss benefits in question were due to Steets when she died, and Section 410 has no application here.[18]

Section 410's requirement that employers pay the estate any "compensation due such claimant to the date of death" does not mean that employers must also pay the estate for future specific loss installments that were not yet due when the claimant died. We know this because, when the General Assembly actually intended to create a substantive right to future specific loss benefits in Subsection 306(g), it did not speak in terms of "compensation due such claimant to the date of death." Instead, it explicitly gave dependents the right to "payments of compensation to which the deceased *would have been entitled to* [*sic*] under section 306(c)" had the deceased survived.[19] This difference in language between Section 410 and Subsection 306(g) should give the Majority pause, since courts generally assume that the legislature uses different words when it intends to convey different meanings.[20]

In practical effect, today's decision creates an arbitrary loophole that will give some estates and dependents of deceased workers rights that go far beyond anything that the General Assembly codified. The Act, as written, allows for the survivability of specific loss benefits only in very narrow circumstances, namely, when the claimant dies from some cause other than the work injury and leaves behind one or more statutorily named dependents.[21] The right that the Majority invents today under Section 410 is not so

---

[18]     Celebration Fireworks' obligation to pay the specific loss benefits was not set to begin until Steets' total disability ceased. And, even then, the specific loss benefits were scheduled to be paid in installments over the course of about sixteen years.

[19]     77 P.S. § 541.

[20]     *Commonwealth v. Elliott*, 50 A.3d 1284, 1290 (Pa. 2012) ("[W]hen the legislature uses two different words, we must also presume that it must have meant for the words to have separate meanings." (cleaned up)).

[21]     77 P.S. § 541.

limited; it applies regardless of the claimant's cause of death and regardless of whether the claimant had any qualifying dependents. Thus, although the General Assembly explicitly limited survivors' benefits under Subsection 306(g)—and under Section 307—to dependents, an estate nevertheless may be entitled to specific loss benefits that the claimant never collected if it just so happens that an appeal of the specific loss award was pending when the claimant died. This makes no sense from a policy perspective, and the Majority does not even attempt to explain why the General Assembly would create such a serendipitous carve-out.[22]

The Majority's interpretation of Section 410 also ignores that, until 1972, Section 410 existed in harmony with the pre-amendment version of Subsection 306(g), which explicitly stated that "liability for compensation shall cease" whenever the employee dies from causes unrelated to the work injury.[23] But the Majority's interpretation of Section 410 is irreconcilable with the pre-1972 version of Subsection 306(g). If, as the Majority suggests, Section 410 unambiguously requires employers to pay out a deceased claimant's specific loss benefits after the claimant's death in some circumstances, then why did Section 410, for so many years, exist alongside a statutory provision that says the exact opposite? Today's holding, in other words, ignores the history of the provisions that we are being called upon to interpret.

---

[22] The reason why the General Assembly allowed for benefits under Section 410 to be paid to an estate while limiting the payment of benefits under Section 307 and Subsection 306(g) to dependents is simple. As I have explained, Section 410 is only supposed to apply to compensation that was "due" to the claimant prior to their death. And, had the employer paid those sums prior to the claimant's death, the claimant would then be free to bequeath the money to dependents and non-dependents alike. In contrast, the benefits available under Section 307 and Subsection 306(g) are limited to surviving dependents because they are intended "to vindicate the Act's purpose of providing maintenance to the deceased employee's dependents." TORREY, GREENBERG, & FIEDERER, *supra* note 1, § 7:70.

[23] 77 P.S. § 541 (1971).

Put simply, the Majority is mistaken. When a claimant dies due to his or her work injury, like Steets did, the claimant's dependents are not entitled to specific loss benefits "to which the deceased would have been entitled to [*sic*]," 77 P.S. § 541, but they are entitled to fatal claim benefits under Section 307. Because Steets died with no eligible dependents for purposes of Section 307, Celebration Fireworks' only post-death obligation was to pay funeral benefits, which it did. Contrary to the Majority's analysis, Section 410 does not give Steets' estate the right to collect her unpaid specific loss benefits because those benefits were not yet "due" to Steets when she died.

I respectfully dissent.

Justice Brobson joins this dissenting opinion.