Gaughan *v.* Commonwealth, Appellant.

Argued June 13, 1966. Before Ervin, P. J., Wright, Watkins, Montgomery, Jacobs, Hoffman, and Spaulding, JJ.

*S. John Cottone,* Associate Counsel, with him *Thomas E. Roberts,* Chief Counsel, *Raymond Kleiman,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Harry P. O'Neill, Jr.,* for appellee.

OPINION BY HOFFMAN, J., September 15, 1966:

This is an appeal from an order of the lower court affirming a decision of the Workmen's Compensation Board granting compensation benefits to claimant, Mary M. Gaughan, widow of Robert Gaughan, and her minor children.

Robert Gaughan, age 40, had been employed as a trooper in the Pennsylvania State Police for seventeen years. On December 12, 1963, he reported to work and was instructed to investigate an automobile accident. At the scene of the accident, Gaughan discovered that several persons, two of whom were close acquaintances, had been seriously injured in a two car collision which had occurred on Route 6 close to the intersection leading to the Shadowbrook Country Club.

Gaughan was the only police officer at this accident. Visibility at that hour was poor, and the road was slippery. Testimony reveals that Gaughan attempted to direct the flow of traffic on both Route 6 and the intersection leading toward the country club. At the same time he was questioning witnesses, measuring skid

marks, and providing care for the injured. In addition he was called upon to disconnect a blaring horn in one of the damaged cars and to raise the hood on another. One witness testified that, "He just kept dashing back and forth from one car to the other and trying to direct traffic." Another witness testified that, "He seemed very concerned and was very active and very busy, involved in all the running back and forth from one car to the other." A third stated that, "He was running from one car to another to find out whether anybody had been injured." While Gaughan was engaged in these almost frenetic activities, the ambulance, which should have arrived in five minutes, did not appear for twenty to twenty-five minutes.

A Dr. Rhineheimer, who was also aiding those injured in the collision, testified that before the ambulance came, Gaughan complained to him of a "squeezing feeling" in the chest. Both Dr. Rhineheimer and a Dr. Goldstein, who testified for appellant, agreed that Gaughan was suffering a heart attack at that moment. Nonetheless, Gaughan remained on duty at the scene of the accident until the injured parties were removed by ambulance. He then returned to the police station where he died several minutes later.

In an appeal from the Workmen's Compensation Board, if there is competent and substantial evidence in the record to sustain the findings of the board, such findings are conclusive and cannot be disturbed by the Court. *Angermier v. Hubley Manufacturing Co.*, 206 Pa. Superior Ct. 422, 427, 213 A. 2d 171, 174 (1965). The Board in the instant case found that, "the demise of this decedent was caused by the unusual physical exertion he exerted in the discharge of his duties."

It is well settled that an injury resulting from overexertion or unusual or extraordinary exertion in the course of employment is an "accident" within the meaning of the workmen's compensation laws and is

compensable. *Lemmon v. Pennsylvania Department of Highways,* 164 Pa. Superior Ct. 254, 258, 63 A. 2d 684, 686 (1949). Appellant contends, however, that claimant's evidence was insufficient to prove that Gaughan suffered a heart attack as a result of unusual physical exertion, because Gaughan was merely engaged in the ordinary activity of a police officer.

The problem presented in the instant case is similar to that presented in *DeEsch v. Emmaus Borough,* 143 Pa. Superior Ct. 225, 18 A. 2d 89 (1941). In *DeEsch,* decedent and a fellow police officer found it necessary to exert considerable force in arresting an intoxicated person. Shortly thereafter, decedent complained of illness and died three days later. The employer contended that the accident occurred in the course of decedent's employment, and while he was merely engaged in the performance of his ordinary and usual duties as a policeman.

In affirming the judgment allowing compensation benefits, we quoted with approval the statement by the lower court that, "The arrest of a drunken man may have been an everyday occurrence and certainly it was decedent's duty to do whatever was necessary to subdue him and remove him as a source of annoyance and danger to his family, but, as testified by officer Sicher, [the accompanying policeman] the arrest of this particular inebriate necessitated a use of force far beyond that usually required. Every one of the elements of this arrest may have been commonplace; the combination of all of them in one arrest was fortuitous and unusual." Id. at 230-31.

We similarly agree here with the statement of the lower court that, "In the instant case there is sufficient evidence to sustain the Board's findings that this one trooper attempted to do all of the jobs that are necessary in relation to the investigation of an accident, to wit: directing traffic, assisting the injured, running

back and forth attempting to get assistance, attempting to lift the hood of the car and open the door of the car and, in general, performing duties that would normally be done by more than one officer." Moreover, it would appear from the record that this trooper continued to assist at the scene of the accident even after he suffered the initial chest pains.

We conclude, therefore, as we did in *DeEsch,* that there was sufficient evidence to sustain the findings of the Board that the heart attack resulted from unusual or extraordinary exertion in the course of employment and, therefore, constituted an "accident" within the meaning of §301(c) of The Pennsylvania Workmen's Compensation Act.

Appellant further contends, however, that claimant failed to sustain her burden, because it was incumbent upon her to produce unequivocal medical testimony which could establish that overexertion caused death, citing *Lingle v. Lingle Coal Company,* 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964).[1]

In *Lingle,* however, Judge WATKINS, speaking for the court, recognized that when the disability is the immediate, direct, and apparent result of the accident, expert testimony is not required on the question of causation. *Witt v. Witt's Food Market,* 122 Pa. Superior Ct. 557, 186 A. 275 (1936). In *Lingle* it was essential that claimant produce unequivocal medical testimony establishing causal connection, because claimant was obviously a very sick man.

In the instant case the Board found that trooper Gaughan enjoyed excellent health prior to his death. On the night of December 12, 1963, however, while engaged in the unusual strenuous activities described above, Gaughan suffered a heart attack. He complained

---

[1] Dr. Rhineheimer, who testified for claimant, expressed his opinion that death was due to Gaughan's emotional stress and strain at the scene of the accident.

of this immediately to Dr. Rhineheimer. Notwithstanding this heart attack, Gaughan remained on duty at the scene of the accident until the injured parties were taken away and the emergency had passed. He then returned to the police station where he died only minutes later. Under these circumstances, taking into consideration both the unusual physical exertion and, as Dr. Rhineheimer testified, the extreme emotional stress to which Gaughan was subjected, we find that there was sufficient evidence from which the Board might conclude that Gaughan's heart injury was the direct and immediate result of the unusual effort required of him in the discharge of his duties.

Judgment affirmed.