State Workmen's Insurance Fund *v.* Young.

Argued March 9, 1971, before Judges KRAMER, WILKINSON, JR., and ROGERS, sitting as a panel of three.

*Roy N. LaRocca,* Special Assistant Attorney General, with him *Thomas E. Roberts,* Assistant Attorney General, *Raymond Kleiman,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellant.

*Louis G. Feldmann,* with him *Thomas L. Kennedy,* and *Feldmann & Ciotola,* for appellee.

OPINION BY JUDGE KRAMER, April 21, 1971:

This is an appeal from an Order of the Court of Common Pleas of Carbon County dated October 9, 1970, sustaining the appeal of Ellen Young (appellee) and vacating the order of the Workmen's Compensation Board (Board) dated June 6, 1962, which had dismissed the fatal injury claim of appellee arising from the death of her husband, Russell A. Young.

The facts giving rise to the claim were that appellee's husband, an officer in the Pennsylvania State Police with about 12 years of service, died on May 18, 1957, at about 7:30 p.m., of a coronary occlusion resulting from a coronary heart disease brought on by diabetes mellitus as aggravated by the activities which the decedent performed during the day of his death. Decedent had a history of diabetes over a 17-year period and received an injection of insulin daily.

For many years prior to his death the decedent's duties consisted primarily of inspecting garages with only incidental police work, in the usual sense, which the decedent might encounter driving to and from his primary duty. Also included in his regular duties was the performance of general fatigue duties which involved cleaning and maintenance at the State Police Barracks in Lehighton every Saturday. The record discloses a description of these general fatigue duties as cleaning floors, dusting and polishing furniture, and other general housecleaning which entailed the physical moving of desks and chairs and filing cabinets weighing between two and three hundred pounds each. On the day in question, May 18, 1957, the decedent was instructed by his superior officer to include in his general housecleaning duties the job of cleaning the inside and outside windows of the barracks. The record discloses that the cleaning of windows on this date in question was the first time that the windows had been cleaned by decedent that spring. The record discloses

that in cleaning the windows the decedent would have had to move, ascend and descend from a ladder because the windows in size and position ranged from about four feet from the ground to a height of about 11 feet from the ground. The decedent on the day in question worked from 8:00 a.m. until 5:00 p.m., with a break for lunch. The record discloses that during the day witnesses observed the decedent to be of a pale complexion and complaining of not feeling "so hot".

Following his tour of duty that day, the decedent met with two other men, and the three of them proceeded to drive two trucks filled with shale to a summer cottage of the decedent. At the cottage the decedent raked and pushed shale from one truck and raked shale which had been dumped from the other truck onto the road leading to the cottage. During the course of this road shale project, in which appellee also assisted in raking, decedent, in looking for a large rock to fill a hole in the road, bent over to pick up a large rock. Before he could lift the rock, he straightened up, then collapsed and fell to the ground. One of the men attempted to obtain the services of a doctor, who could not come to the scene, and the men placed the decedent in a station wagon and took him to a physician, where he was pronounced dead, at 7:30 p.m., May 18, 1957.

Appellee filed her fatal injury claim petition on July 12, 1957. Hearings were held in 1961. On October 5, 1961, the Referee made an award to the appellee on the basis that death of decedent was caused by an accident within the meaning of the Workmen's Compensation Act. On appeal, the Board vacated two of the Referee's findings of fact and one conclusion of law. The import of the Board's adjudication was a determination that decedent died as a result of a coronary occlusion from activities engaged in on the date of death, but not constituting an over-exertion or accident within the meaning of the Act. On June 6, 1962, the

Board issued its adjudication reversing the Referee, as stated above. On July 10, 1962, an appeal was taken to the Court of Common Pleas of Carbon County, which sustained the widow's appeal, vacated the Board's Order, and in effect reinstated the award of the Referee.

There is absolutely no explanation anywhere in the record of this case why the Court of Common Pleas of Carbon County did not act on this appeal until October 9, 1970, more than eight years after the appeal had been filed. This kind of delay is inexcusable, especially in view of Section 427 of the Act (Act of June 2, 1915, P. L. 736, 77 P.S. 902) wherein there is a legislative mandate to the effect that "Any appeal from the action of the board to a court of common pleas or the county court of Allegheny County, as the case may be and from it to the Superior Court shall take precedence over all other civil actions." Delays such as we find in this case are not fair to anyone and place the entire judicial system in an unfavorable light.

The appellant argues that the court below erred in finding an accident within the meaning of the Workmen's Compensation Act, and secondly, that it committed reversible error in substituting the Court's judgment on the findings of fact for that of the Board.

The lower court, in relying upon the findings of the Referee, which had been vacated by the Board, committed an error. This point was clearly covered in the case of *Ferlazzo v. Harbison-Walker Refractories Company,* 200 Pa. Super. 390, 392, 189 A. 2d 189, 190 (1963) where the Court said: "The court below was under a misapprehension as to the scope of judicial review. When a claim goes to the courts the appeal is not from the findings of the referee, but from the findings and conclusions of the board. . . . The board is the final arbiter of facts, the referee is only an agent of the board and the board may reject, change or adopt the findings of the referee."

A reviewing court may not substitute its own findings of fact contrary to those found by the Board, because the court believes them to be more appropriate. Unless there has been a capricious disregard of evidence or the findings of the compensation authorities are not supported by competent evidence, those findings made by the Board are conclusive and have the weight of a jury verdict. *Krischunas v. Philadelphia & Reading Coal & Iron Company,* 296 Pa. 216, 145 A. 905 (1929).

In *Dindino v. Weekly Review Publishing Company, Inc.,* 188 Pa. Super. 606, 610, 149 A. 2d 475, 477 (1959), the court said: "Questions of fact are for the compensation authorities and the appellate court may not make an independent appraisement of the evidence. Burman v. George J. Blair Company, 137 Pa. Super. 193, 8 A. 2d 731. The Board is not required to accept even uncontradicted testimony as true and, where its decision is against the party having the burden of proof, the question before the court on appeal is whether the Board's findings of fact are consistent with each other and with its conclusions of law and order and can be sustained without a capricious disregard of the competent evidence."

The Superior Court reiterated this principle in the case of *Chilcote v. Leidy,* 207 Pa. Super. 345, 349, 217 A. 2d 764, 766 (1966): "The Workmen's Compensation Board is not required to accept even uncontradicted testimony as true. Peron v. Phoenix Park Coal Company, 202 Pa. Super. 495, 198 A. 2d 370 (1964); . . . 'Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge [or an administrative agency] with capricious disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence.

Pusey's Estate, 321 Pa. 248, 262, 184 A. 844, 850.'" Employing this standard of review in the case at bar, deference must be paid to the expertise of the Workmen's Compensation authorities. We can find no capricious disregard of competent evidence.

The appellee argues that the case of *Gaughan v. The Pennsylvania State Police*, 208 Pa. Super. 406, 222 A. 2d 446 (1966) controls the ruling in this case. However, a close reading of that case indicates that the decedent state trooper there enjoyed excellent health prior to his death caused by a heart attack following police duties at the scene of an accident. In this case, the decedent had a long history of diabetes, from which the doctor witness concluded that the decedent suffered from a serious heart disease.

Next, the appellee relies heavily upon the case of *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A. 2d 601 (1969) for a proposition that the "unusual strain doctrine" should be applied to this case. Under this doctrine there can be no recovery unless the claimant proves that the death or injury resulted from an overexertion or unusual strain encountered in the course of employment.*

However, after a careful reading of *Hamilton*, one must conclude that whether the exertion or unusual strain occurred during employment or whether the unusual strain doctrine may be applied, involves questions of fact to be determined by the Board. The court in *Hamilton*, at page 97, said: "We cannot and should not, as a judicial body, convert workmen's compensation coverage into general group life and health insurance coverage."

A review of the record in this case leads us to the conclusion that in reviewing the evidence in the light

---

* See *Pudlosky v. Follmer Trucking Co.*, 206 Pa. Super. 450, 214 A. 2d (1965).

most favorable to the prevailing party in the adjudication of the Board, the findings and order of the Board were supported and consistent with the evidence and that there was not a capricious disregard of competent testimony by the Board. Although we may be sympathetic with the appellee, we are still bound by the law of this Commonwealth, and that law tells us that unless the finder of fact (the Board) has committed some arbitrary and capricious abuse of its discretion or an error of law, the adjudication of the Board should be sustained, and therefore, the Order of the court below is hereby reversed.