Stump *v.* Follmer Trucking Company.

Argued December 8, 1971, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*E. C. Marianelli,* for appellant.

*Donald A. Lewis,* for appellee.

OPINION BY JUDGE MENCER, January 6, 1972:

In the early morning hours of September 5, 1962, a tractor-trailer truck owned by Follmer Trucking Company, being driven east on Route 61 in the Borough of Frackville, Pennsylvania by their employee, David A. Stump, struck a tree limb overhanging the street. David A. Stump stopped the truck about 120 feet from the tree and turned on the truck's flasher lights. He then proceeded to the rear of his truck holding a two-cell flashlight in his left hand. Thereafter, he was found lying on the sidewalk near the tree. He was clutching his stomach with his arms and, although conscious, did not respond to questions. He was removed to a doctor's office and died approximately one hour later. An autopsy was performed and the report concluded that "[t]his man died of coronary artery thrombosis. He was involved in an accident. His truck struck a tree. The post mortem revealed no injuries that would have caused this man's death. There was some retro-peritoneal hemorrhage in the region of the right kidney, but it was not sufficient to be a factor."

The claimant-appellee in this appeal, Miriam G. Stump, is the widow of David A. Stump, deceased. She seeks workmen's compensation benefits for herself and her minor daughter because of the death of her husband while in the course of his employment as a truck driver with the defendant-appellant, Follmer Trucking Company.

The referee made an award but on appeal the Workmen's Compensation Board (Board) reversed the referee and dismissed the claim petition, such action being based on the Board's conclusion that no causal con-

nection had been established between the accident of the truck's striking the tree limb and David A. Stump's death which it attributed to natural causes. An appeal was taken by claimant to the Montour County Branch of the Court of Common Pleas of the 26th Judicial District which reversed the Board and reinstated the award made by the referee. The defendant appealed.

We must recognize that the Board is the fact finding body and it is not the prerogative of the lower court or of this Court to assume this privilege. *Puskarich v. Puskarich,* 174 Pa. Superior Ct. 581, 102 A. 2d 191 (1954). The findings of the Board prevail on appeal if there is competent and substantial evidence in the record to sustain them. *Gaughan v. Commonwealth,* 208 Pa. Superior Ct. 406, 222 A. 2d 446 (1966). As we said in *State Workmen's Insurance Fund v. Young,* 2 Pa. Commonwealth Ct. 423, 427, 276 A. 2d 552, 555 (1971), quoting with approval from *Dindino v. Weekly Review Publishing Company, Inc.,* 188 Pa. Superior Ct. 606, 610, 149 A. 2d 475, 477 (1959): " 'Questions of fact are for the compensation authorities and the appellate court may not make an independent appraisement of the evidence: Berman v. George J. Blair Company, 137 Pa. Superior Ct. 193, 8 A. 2d 731. The Board is not required to accept even uncontradicted testimony as true and, where its decision is against the party having the burden of proof, the question before the court on appeal is whether the Board's findings of fact are consistent with each other and with its conclusions of law and order and can be sustained without a capricious disregard of the competent evidence.' "

Here the crucial fact question is whether the decedent's death was caused by and resulted from an accident and not from natural causes. The five medical witnesses in this case agree that the cause of David A.

Stump's death was coronary thrombosis. However, there is a disagreement among the medical witnesses as to whether the involvement in the accident of the truck's striking the tree produced emotional excitement or shock in David A. Stump which, in turn, caused the coronary thrombosis.

We stated in *Frombach v. United States Steel Corp.*, 2 Pa. Commonwealth Ct. 556, 559, 279 A. 2d 779, 781 (1971) : "Of course, it is well settled that where there is a conflict of medical opinion, it is the province of the compensation authorities to decide which conclusion will be adopted. Chernetsky v. William Penn Stripping Co., 200 Pa. Superior Ct. 277, 188 A. 2d 770 (1963). The Board is not required to accept the testimony of any witness, even though the testimony is uncontradicted, Lowery v. Pittsburgh Coal Co., 427 Pa. 576, 235 A. 2d 805 (1967), nor is the Board required to award compensation even where the defendant has presented no evidence, because it could conclude that the claimant has not met the burden of proof, or that his witnesses are not credible, and not worthy of belief even though uncontradicted. Updegrove v. Floyd Wells Stove Co., 160 Pa. Superior Ct. 51, 53, 49 A. 2d 870, 872 (1946). Therefore, to choose the report of one specialist over the other does not in and of itself show a capricious disregard of evidence, and, even if the two medical reports are consistent, the Board is not obliged to follow either or both of them."

It is not the province of the reviewing court to weigh conflicting testimony or to decide what inferences should be drawn therefrom. *McCafferty v. Masten Transportation, Inc.*, 205 Pa. Superior Ct. 239, 209 A. 2d 11 (1965). The credibility and weight of the testimony is for the Board. *Verna v. Stabler*, 204 Pa. Superior Ct. 87, 203 A. 2d 578 (1964). Claimant had the burden to prove, not only the happening of an ac-

cident, but also a causal relationship between the alleged accident and decedent's subsequent death. *Pudlosky v. Follmer Trucking Company,* 206 Pa. Superior Ct. 450, 214 A. 2d 270 (1965). Compensation may not be awarded without a finding of causation, and the power to make such a finding is exclusively vested in the compensation authorities. *Gavandula v. Ryan Brothers,* 205 Pa. Superior Ct. 325, 209 A. 2d 13 (1965).

Here the medical testimony differed on the question of causation and the Board chose to accept the testimony of those doctors who expressed an opinion that there was no causal connection between the accident and the coronary thrombosis.

Dr. R. A. Stevens testified:

"Q. Do you have an opinion in this case as to whether or not the striking of this tree by the tractor operated by David A. Stump on the morning of September 5, 1962, was the cause or in any way a factor in causing this man to die a few hours thereafter from the coronary thrombosis? Do you have an opinion?

"A. I have an opinion based on the information that you have just presented, which is based upon the testimony that I have read. It is my opinion that I find no causal relationship between the accident and the cause of death as stated by Dr. Hobbs.

"Q. Will you give us now, in detail, your reasons for such an opinion?

"A. The cause of death was primarily due to chronic disease of the coronary artery or in the heart of the deceased. As a result of this long-standing process—and I say 'long standing' because there was evidence that the muscle of the heart had been altered and had become fibrotic as described by Dr. Hobbs, and that the terminal event occurred secondary to a plug or thrombus which formed in the left coronary artery, described as being severe, and that the artery itself

was found to be affected by atherosclerosis, the degree described as being severe.

"The man is presumed to have died about 3:40 a.m. on September 5, 1965, this being contained in the coroner's report, from information suggested by Dr. Otto Miller of Ashland, Coroner of Schuylkill County. It is my opinion that the man developed, as the result of the thrombus found in the coronary artery, an acute condition which interfered with the proper functioning of his heart. This, in turn, brought about an abrupt change of the body's hemo-dynamics—or we might call it a circulatory failure—with the result that he died due to lack of sufficient oxygen to the vital tissues of his body, the lack of oxygen being due to the embarrassment of the heart function.

"In my opinion, what happened was the result of a natural process. It was a natural cause of death, secondary to the pathological changes already referred to, and occurred in my opinion spontaneously and without being aggravated or induced by any events which immediately preceded it, including the cab of the truck he was driving running into a tree limb projecting over the street.

"There is evidence that the heart failure was of such a nature that it produced marked congestion in both lungs, and that the condition secondarily was of such a nature as to be able to cause, due to the marked congestion, to the rest of the body, small petechial hemorrhages to occur in the scalp and on other parts of the body including that in the retro-peritoneal area and including that in the right kidney, which hemorrhage being described as slight and, in the opinion of the pathologist, of little clinical significance. This is not an unusual post-mortem finding in instances of death of this type."

Dr. John Giering testified:

"Q. And, keeping in mind the findings made by Dr. Hobbs and the condition the body was found in, whether or not in your opinion there is any causal relation between the accident caused by David Stump running into the tree—whether or not that in any way caused or was a factor in bringing about his death from a coronary occlusion?

"A. I do not think it was a factor.

"Q. You heard the testimony of Dr. Stevens this morning?

"A. Yes.

"Q. Would you agree with his testimony and his answers?

"A. Yes.

"Q. And what are some of your reasons for reaching the conclusion that you have just given, that there is no causal relationship between the accident and the death?

"A. Well, the autopsy report does not describe any injury. This man died of a coronary thrombosis; he had a clot in an arteriosclerotic blood vessel; and that is a common cause of death.

"Q. What about any shock that might have been the result of a driver striking a tree and his vehicle being forced to stop? Whether or not that played any part in either causing the blood to become thicker or causing the heart to work harder? Whether or not that had any effect in accelerating this man's death?

"A. Shock will frequently follow coronary thrombosis; but I think if the injury were severe enough to cause shock there would be some evidence of it on the body at post mortem.

"Q. Does the post-mortem report in this case show any evidence that it did cause injury, either on the exterior part of the body or the interior?

"A. No."

There was also medical testimony to the contrary but we must keep in mind that it is for the Board to resolve conflicting testimony including that of medical witnesses. *Banas v. Eagle Coal Company*, 196 Pa. Superior Ct. 580, 175 A. 2d 897 (1961). Also, the evidence must be construed favorably to the party who prevailed before the Board. *Jones v. Collier Construction Company*, 207 Pa. Superior Ct. 39, 215 A. 2d 340 (1965). A reading of the record in the instant case convinces us that in a consideration of the evidence in the light most favorable to the prevailing party in the decision of the Board, the findings and order of the Board were supported by and consistent with the evidence and that there was not a capricious disregard of competent testimony by the Board. See *Scott and Statesman Insurance Company v. DeAngelis*, 3 Pa. Commonwealth Ct. 168, 281 A. 2d 172 (1971); *State Workmen's Insurance Fund v. Young, supra.*

Here we have no contention that the factual situation would justify the "unusual strain" doctrine's being applied to this case. See *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A. 2d 601 (1969); *Gaughan v. Commonwealth, supra.* We also are aware that it has been held that emotional excitement is not such a fortuitous, untoward or unexpected happening as to constitute an accident. *Bussone v. Sinclair Refining Company*, 210 Pa. Superior Ct. 442, 234 A. 2d 195 (1967); *McGaw v. Bloomsburg*, 214 Pa. Superior Ct. 342, 257 A. 2d 622 (1969).

We may not always be in accord with the result reached in a compensation case. We may well have reached a contrary result upon the same record if the responsibility of being the finder of fact rested upon our shoulders. However, it has well been said by Judge KRAMER in *State Workmen's Insurance Fund v. Young, supra*, at page 429 of 2 Pa. Commonwealth Ct.: "Al-

though we may be sympathetic with the appellee [claimant], we are still bound by the law of this Commonwealth, and that law tells us that unless the finder of fact (the Board) has committed some arbitrary and capricious abuse of its discretion or an error of law, the adjudication of the Board should be sustained . . . ." Here the application of that law compels us to reverse the lower court.

The judgment of the lower court is reversed and the order of the Workmen's Compensation Board dismissing the claim petition of appellee is reinstated.