Utter et al., Appellants, *v.* Asten-Hill Mfg. Co.

Argued May 3, 1973.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Joseph V. Furlong, Jr.,* with him *Tabas, Smith & Furlong,* for appellants.

*John F. McElwenny* and *Joyce Ullman,* for appellees.

*Stephen E. Levin,* Special Assistant Attorney General, for State Workmen's Insurance Fund, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, September 19, 1973:

This appeal involves three separate cases which were consolidated in the court below. Each case involves the same basic questions of fact and law.

The decedents, Robert Utter and Cecil Bambrick, were both employees of the Asten-Hill Manufacturing Company ["Asten-Hill"]. The Utter cases involve a claim for disability by the decedent during his lifetime and a claim for dependency benefits by his widow. Both claims were brought pursuant to The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, §§101-503, *as amended,* 77 P.S. §§1201-1603. In the Utter cases, Asten-Hill is represented by the State Workmen's Insurance Fund. The Bambrick case involves a claim under the Act for dependency benefits by Cecil Bambrick's widow. In this connection, Asten-Hill is represented by the Pennsylvania Manufacturers' Association Insurance Company.

These cases originated as awards of compensation by the referees below. Each award was affirmed by the Workmen's Compensation Board and the Board's decisions were upheld by the Court of Common Pleas of Philadelphia. The Commonwealth Court reversed (5 Pa. Commonwealth Ct. 664, 291 A. 2d 354 (1972); opinion of the court by WILKINSON, J.; concurring opinion by BLATT, J.; dissenting opinion by KRAMER, J., joined by CRUMLISH, JR., J.). We granted a petition for the allowance of appeal.

The decedent, Robert Utter, was employed by Asten-Hill from October 14, 1946, to August 10, 1966, as a

weaver engaged in the manufacture of dryer felts made from asbestos. On September 26, 1966, Mr. Utter filed a claim for compensation alleging that he was suffering from asbestosis[1] and had become totally disabled. He died on February 25, 1967, at the age of forty-four, before the initial hearing on his disability petition. We agree preliminarily with the decision of the Commonwealth Court that there is no evidence on the record on which to base a finding that Robert Utter was totally disabled prior to his death. 5 Pa. Commonwealth Ct. at 667, 291 A. 2d at 355. With respect to the claim of Robert Utter, therefore, the judgment of the Commonwealth Court is affirmed and the decedent's claim petition for disability is dismissed. The dependency benefits claim of Margaret Utter presents a different question and is considered in this opinion with the claim of Alice Bambrick, the widow of Cecil Bambrick.

Cecil Bambrick was employed by Asten-Hill from September 5, 1950 to October 30, 1962. This decedent, like Robert Utter, was employed as a weaver. From the date of his departure from Asten-Hill in 1962 until the date of his death on September 11, 1966, Mr. Bambrick was engaged in employment which did not present the hazard of asbestos exposure. The referee concluded that the cause of his death was carcinoma of the lungs from asbestos exposure.

Initially we must note that it is not the prerogative of either the court below or the appellate court to usurp the fact finding privilege of the Workmen's Compensation Board. The Board's findings should prevail if there is competent evidence to sustain them. *Follmer Truck-*

[1] "Asbestosis is a pneumoconiosis resulting from the inhalation of asbestos fiber dust (hydrated magnesium silicate in fibrous form). It is characterized by a diffuse pulmonary alveolar fibrosis, and the presence of 'asbestos bodies'." 5 Pa. Commonwealth Ct. at 668, 291 A. 2d at 356, *Quoting from* 4a Gordy-Gray, *Attorneys' Textbook of Medicine,* ¶205C.01 (3d Ed. 1970).

*ing v. Stump,* 4 Pa. Commonwealth Ct. 110, 286 A. 2d 1 (1972); *State Workmen's Insurance Fund v. Young,* 2 Pa. Commonwealth Ct. 423, 276 A. 2d 552 (1971). Our inquiry must be limited to the question of whether the findings of fact support the Board's conclusions.

Section 310(e) of the Act provides benefits for disability or death caused by asbestosis.[2] At the time of its application in these proceedings, Section 108(1) defined asbestosis as a specifically compensable occupational disease:

"The term 'occupational disease,' as used in this act, shall mean *only* the following

. . . .

"(1) Asbestosis in any occupation involving direct contact with, handling of, or exposure to the dust of asbestos." 77 P.S. §1208(1). (Emphasis added) A simultaneous reading of Sections 310(e) and 108(1) permits only one conclusion: the legislature intended to compensate *disability or death caused by asbestosis.* In this legislative context, the appellants have offered evidence tending to show that each of the decedents died of carcinoma of the lung caused by *exposure to asbestos.* With respect to the death of Robert Utter, appellants' medical expert testified as follows: "In my opinion there can be very little doubt that Mr. Utter's death was due to *lung cancer causally related to asbestos exposure.* (Emphasis added)." Medical testimony respecting the death of Cecil Bambrick reached the same conclusion: "Far from any uncertainty, I feel very confident that Mr. Bambrick died of a carcinoma of the lung *consequent upon asbestos exposure.* (Emphasis added)." Though we have scrutinized the record, we can find no evidentiary support for the conclusion that the

---

[2] "Compensation shall be payable, as otherwise provided in this act, for total disability or death caused by . . . asbestosis . . . ." 77 P.S. §1401(e).

decedents expired from cancer caused by *asbestosis*.[3] Because death caused by *asbestosis* is compensable, and because the evidence as construed in a light most favorable to the appellants indicates that the cause of death in each instance was cancer caused by *exposure to asbestos,* the awards to these claimants under Sections 310(e) and 108(1) of the act are unsupported by the evidence.[4]

The second part of the appellants' argument is that death benefits should be paid here under the provisions of Section 108(n) of the act, added February 28, 1956, P. L. (1955) 1095, §1:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases:

. . . .

"(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population." We have already considered expert testimony

---

[3] Nor can we take judicial notice of a connection between asbestosis and cancer. The present state of medical knowledge does not permit such an assumption: "A number of British authors have done studies which show a significantly greater incidence of lung cancer among asbestos workers than is found in the general population or among people who died of silicosis. On balance, the literature would appear to indicate that the suspicion of a correlation between asbestosis and lung cancer cannot be dismissed, but that sufficient evidence is lacking to make such a correlation definitive." 4a Gordy-Gray, Attorneys' Textbook of Medicine, ¶205C.34 (3d Ed. 1970).

[4] Section 108(1) was amended by House Bill No. 2478, October 17, 1972, effective June 1, 1973, so that it now reads as follows:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases:

". . . .

"(1) Asbestosis *and cancer resulting from* direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure. [Emphasis added]."

indicating that Robert Utter and Cecil Bambrick died of lung carcinoma causally related to asbestos exposure. The first evidentiary criterion under Section 108(n) is thus satisfied: the decedents were exposed to an asbestos hazard which the Workmen's Compensation Board and the court below determined caused their lung cancers, and ultimately their deaths.

The second and third elements of an "occupational disease" as defined by Section 108(n) present two sides of the same inquiry: is lung cancer peculiar to decedents' occupation or is it common to the public?

Appellants argue that the distinguishing characteristic of lung cancer in this context is its cause. That is, although lung cancer occurs commonly in individuals who are not asbestos workers, these particular decedents were the victims of occupational diseases because a commonly occurring disorder was occupationally caused.

In support of this thesis, the appellants recount expert testimony which indicates that the characteristics of the decedents' disorders reveal a peculiarity associated with lung cancer in asbestos workers not associated with the typical manifestations of lung cancer in general: "Dr. Selikoff [expert witness for the claimants]: *Lung cancer in general* has certain characteristics and I don't refer to the cell type which can be anyone of a number including adeno carcinoma, aquamous cell carcinoma, eat cell carcinoma, undifferentiated carcinoma etc., plus its tendency to metastasize in many parts of the body, plus its invasive and often fatal nature, plus its clinical symptoms such as coughing blood etc., but it *has the characteristic in general of occurring in the large bronchi, the trachea, the main bronchus and the bronchi near the main bronchus on either side. It is generally a main bronchus tumor.* Q. Excuse me doctor, just to clear my own thinking here. You're talking about cancer in general? A. In general not related to asbestos, in general. And that's one of the reasons why

it's so frequently fatal as you know on the overall I don't think we cure more than 5% because when it's in the main bronchi you just can't go far enough to remove it completely in many cases and when it hits the trachea or the carina you just can't remove two lungs. *There is a peculiarity about lung cancer associated with asbestos exposure however, in that it occurs typically peripherally in the outer part of the lung."* (Emphasis added)

That Robert Utter's cancer manifested itself peripherally in his lungs is indicated by hospital x-rays, as examined and testified to by Dr. Selikoff: "I have placed on the out box two x-rays dated July 16, 1966 at the Episcopal Hospital with the name of Robert C. Utter. Both taken on the same day but one taken in the posterior anterior projection and the other taken in the lateral projection. The films have two significant abnormalities. *The first abnormality is the appearance of a mask lesion rather nodular in outline located peripherally in the right upper lobe* and well seen also on the lateral projection. *Its peripheral nature is beautifully demonstrated by clear lung between the hilar structures, the central bronchi in other words, and the lesion itself.* This is similarly demonstrated on the lateral projection where again the main bronchi area seemed to be several inches away from this peripheral neoplasm, lesion." (Emphasis added) The carcinoma in Cecil Bambrick's lungs, according to Dr. Selikoff, was also peripherally located. Dr. Selikoff offered the following testimony with respect to the records of Mr. Bambrick's hospitalization: *"I was interested to read in Dr. Fite's report when he talks about interpretation of his historical findings. He talks about the fact that it's an epidermoid carcinoma which is another way of saying aquamus carcinoma, but he was struck by its peripheral location, he says the peripheral location in the lung parenchyma is somewhat atypical for a primary carcinoma of the lung however,* on the assumption that no other epidermoid

carcinoma has been identified in other parts of the body the primary pulmonary nature of this lesion may be assumed. *In other words what Dr. Fite is saying is that there is an awfully unusual place for a lung cancer.* Could it have been coming from somewhere else, this is very unusual for an ordinary lung cancer and it is. *Most of the usual lung cancers are central in location, the asbestos lung cancers are usually peripheral* in location although they may assume different forms that location is significant." (Emphasis added)

Appellees argue that *Scott v. United States Steel,* 203 Pa. Superior Ct. 459, 201 A. 2d 243 (1964), is dispositive of the issue of whether these claimants may recover under Section 108(n). In *Scott,* the claimant was employed as a laborer in the coal tar by-products division of United States Steel. When the claimant became totally disabled from lung cancer, and eventually died, his widow brought a claim for death benefits under Section 108(n) of the act. The Superior Court affirmed the decision of the Workmen's Compensation Board denying the claim, and in language bearing upon the decision here, expressed its view about the quality of evidence necessary to sustain a claim under Section 108(n): "The burden of proof under [§108(n)] is a heavy one. [The claimant] must prove that the disease, in this case, lung cancer, is a hazard of his employment and that he was exposed to it; that cancer is a disease which is peculiar to the industry or occupation; and that it is not common to the general public. . . . We must take judicial notice of the fact that lung cancer is not peculiar to this industry and that it is common to the general public. We might just as well say that this claimant was exposed, in this industry, as he might very well be, to the common cold and that it is peculiar to the industry and not common to the general public." 203 Pa. Superior Ct. at 462, 201 A. 2d at 244.

The Superior Court concluded in *Scott* that recovery under Section 108(n) could not be sustained because cancer is neither peculiar to the steel industry nor uncommon in the general public. The underpinnings of the *Scott* decision, and the position urged upon us by the appellees here, is that the legislature intended Section 108(n) to apply only to the discovery of new diseases having their genesis in the claimants' occupations. This interpretation severely limits the usefulness of Section 108(n) as a vehicle for compensation in situations like this one where the decedent's fatal diseases, though not enumerated elsewhere in the act, are nonetheless generated by an occupational hazard. A more reasoned analysis of Section 108(n), and one which we adopt in this setting, is that cancer can be an occupational disease, though it exists in the general public, if it may be shown by competent evidence that a claimant's cancer is peculiar to the claimant's occupation by its causes and the characteristics of its manifestation. Our review of this record indicates that appellants have shown by competent medical evidence that the decedents' fatalities were caused by "occupational diseases" as that term is defined by Section 108(n) of the Occupational Diseases Act.

With respect to the claim of Robert Utter, the Commonwealth Court is affirmed and the decedent's claim petition is dismissed. With respect to the death benefits claims of Margaret Utter and Alice Bambrick, the Commonwealth Court is reversed and the awards of the Workmen's Compensation Board are reinstated.

Mr. Justice Nix took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view all the compensation benefits, in both the *Utter* and *Bambrick* cases, awarded by the referee,

adopted by the Workmen's Compensation Board, and affirmed by the Court of Common Pleas of Philadelphia are fully supported by the record. These findings of fact by the compensation authorities are correct and should govern the disposition of these cases. See *Bambrick v. Asten-Hill Mfg. Co.*, 5 Pa. Commonwealth Ct. 664, 671, 291 A. 2d 354, 357 (1972) (KRAMER, J., dissenting, joined by CRUMLISH, J.).

I therefore agree with only that portion of the majority's mandate which reverses the Commonwealth Court's order and reinstates the Board's award. In doing so, I do not accept the majority's construction of sections 108(*l*) and 301 (e) of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, §§108(*l*), 301(e), as amended, 77 P.S. §§1208(*l*), 1401 (e) 1952). The majority's disposition of the dependency benefit claims of Margaret Utter and Alice Bambrick can rest solely upon its interpretation of Section 1208(n), The Pennsylvania Occupational Disease Act, as amended, Act of February 28, 1956, P. L. (1955) 1095, §1, 77 P.S.§1208(n) (Supp. 1973). By construing sections 108 (*l*) and 301 (e), the majority decides an issue it need not reach.

I dissent from the majority's refusal to reverse the Commonwealth Court's denial of the benefits awarded by the compensation authorities. I would reinstate the Workmen's Compensation Board's award of compensation benefits for disability suffered by decedent, Robert Utter, during his lifetime.

Mr. Justice MANDERINO joins in this concurring and dissenting opinion.