## Van Loan v. SEPTA

26

*Gerald J. Haas*, for appellee.
*Thomas F. McDevitt*, for appellants.

FORER, *J.*, November 3, 1977—This case raises an issue of first impression in Pennsylvania with respect to section 108(n) of the Pennsylvania Occupational Disease Act of June 21, 1939, P.L. 566, secs. 101-503, as amended, 77 P.S. §§1201-1603. Claimant, an employe of defendant Southeastern Pennsylvania Transportation Authority (SEPTA), contracted chronic bronchilitis, peribronchile fibrosis and bronchiolitis obliterans as a result of inhaling fumes of hydrochloric acid in a caustic tile cleaner. Defendant, while admitting the etiology of the illness, disputes that it falls within the ambit of section 108(n).

Before reaching this issue, the court must deal with defendant's argument that plaintiff gave insufficient notice under the Pennsylvania Occupational Disease Act, section 311, 77 P.S. §1411. A

summary of the procedures which have occurred to date reveals that defendant failed to raise this issue timely.

Claimant filed a claim under the act alleging that he became disabled on August 3, 1971, while employed by SEPTA and that the accident occurred while cleaning tiles in the subways with an acidic substance. The nature and cause of the injury was described as "chronic pneumonitis, bronchitis, bronchilitis, and corpulmonal caused by inhalation of caustic fumes from tile cleaner."

After hearing before referee Walter J. Stevenson, First District, on November 14, 1972, February 21 and May 9, 1973, and January 30, 1974, a decision was filed on August 13, 1974, finding for claimant.

Defendant filed an appeal to the Workmen's Compensation Appeal Board on September 3, 1974. At this time, defendant raised four issues in challenging the referee's decision in favor of claimant: 1. Extent of claimant's disability; 2. Failure of claimant to call his personal or any treating physician; 3. Failure to meet the requirements of section 108(n) of the Occupational Disease Act, and 4. Improper consideration of claimant's exhibit C-1 (a chemical analysis report showing the high concentration of hydrochloric acid in the cleaning fluid (C-150) used by claimant).

At oral argument before the board on this appeal, defendant abandoned all arguments except the last objection to claimant's exhibit C-1, namely, that the report was hearsay since the chemist who prepared the report did not testify and was not subject to cross examination.

The board, by order dated January 3, 1975, remanded the matter to the referee to take additional

testimony. The chemist who prepared the chemical analysis C-1 testified at a hearing on November 13, 1975, in detail and corroborated his report verifying the high hydrochloric acid content in C-150. Defendant did not offer any additional evidence. The referee again found in favor of claimant on May 26, 1976.

On July 29, 1976, defendant appealed from the referee's order, again contesting the referee's findings of fact nos. 4, 5, 6, and 8, and also conclusions of law nos. 2, 3, 4.[1]

Nowhere in the first or second appeal was a question raised as to the requirement of proper notice under section 311 nor was it presented at oral

---

1. "FINDINGS OF FACT

"4. That the claimant from 1967 to July 31, 1971 inclusive, during the course of his employment performed cleaning duties using a cleaning product known as C-150, which contains a very high concentration of hydrochloric acid and during this period of time was exposed to fumes of the hydrochloric acid contained in the product C-150, and claimant inhaled such fumes regularly over this period of time.

"5. That as a result of the claimant's exposure to the fumes of hydrochloric acid developed bronchiolitis peribronchiolar fibrosis and bronchilitis obliterans which totally disabled the claimant from August 1, 1971 to the present time.

"6. That the aforesaid condition which totally disabled the claimant is not common to the general population and is an occupational disease which is peculiar to occupations in which employees use hydrochloric acid.

"8. That a qualified and experienced chemist analyzed the cleaning solution C-150 on January 5, 1973, and several days before the hearing at which he testified on November 13, 1975 and on both occasions it contained hydrochloric acid and the mixture was a highly toxic one.

"CONCLUSIONS OF LAW

"2. The referee further concludes as a matter of law that the claimant was totally disabled from an occupational disease

argument. It was not until defendant filed a brief on the second appeal, following oral argument, that the notice issue was raised before the Workmen's Compensation Appeal Board.

The board affirmed the decision of the referee, dismissed the appeal and made an additional finding of fact that "claimant gave notice of his disability on August 3, 1971."

SEPTA took an appeal from the board's decision pursuant to section 427 of the Act of June 2, 1915, P.L. 736, art. IV, sec. 427, as amended, 77 P.S. §872, to this court.

Defendant now raises two questions: 1. Did claimant give proper notice of disability pursuant to section 311 of the Occupational Disease Act? 2. Did claimant prove that he was disabled by an occupational disease under section 108(n) of the Occupational Disease Act?

Claimant asserts with respect to the first issue that defendant waived its rights. The court finds that under the facts as outlined above, defendant was guilty of laches in raising this issue. From the date of the filing of the claim on August 3, 1971,

---

to which he was exposed by reason of his employment and said occupational disease was peculiar to his occupation and was not common to the general population.

"3. The referee further concludes that claimant's exposure to said occupational disease was for a period of less than five years and therefore the claim against the Commonwealth Occupational Disease Fund is dismissed, the claimant having been exposed to the occupational disease claimed for a period of less than five years (Section 308(a)) and that the claim against the self-insured defendant (SEPTA) is Granted.

"4. The referee further concludes that the claimant is entitled to receive benefits for total disability under Section 306(a) of the Occupational Disease Act in the sum of $60.00 per week beginning August 1, 1971."

defendant had notice of the nature of claimant's illness. Defendant cannot assert that it has been precluded from access to medical records or other information necessary to a preparation of its defense by reason of inadequate notice. Claimant has appeared at four hearings and two appeals in a period of almost five years and now, for the first time, is confronted with the defense of inadequate notice. Laches is a species of equitable estoppel. Courts will not permit one party to sleep on his rights at the expense of the other party: Hansell v. Downing, 17 Pa. Superior Ct. 235 (1901); Spearman v. Sterling Steamship Co., 171 F. Supp. 287 (E.D. Pa. 1959).

Compliance with section 311 of the Occupational Disease Act, supra, has been held to be an essential part of a claimant's case: Canterna v. U.S. Steel Corp., 12 Pa. Commonwealth Ct. 579, 317 A. 2d 355 (1974). This section is designed to protect the employer who must prepare to defend against the claim. Statutory protection may be waived under proper circumstances. See Com. by Creamer v. Monumental Properties, Inc., 10 Pa. Commonwealth Ct. 596, 314 A. 2d 333 (1973), aff'd in part, rev'd in part on other grounds, 459 Pa. 450, 329 A. 2d 812 (1974); Elliott v. Lindquist, 356 Pa. 385, 52 A. 2d 180 (1947), 169 A.L.R. 1369.

In the instant case, it is clear that defendant knew of the notice requirements of section 311. In its answer to claimant's original petition, filed July 25, 1972, defendant demanded proof "of notice of any compensable disability." Yet defendant appealed twice to the board without raising the issue. From August 26, 1974, when copies of the decision of the referee were mailed to the parties, to November 19, 1976, the issue of notice was not

raised. During this time, two hearings were held before the appeals board, the matter was remanded for additional testimony before the referee and a hearing was held. Had defendant properly raised the issue at the first appeal and prevailed, there would have been no need for the hearing concerning the testimony of the chemist with respect to exhibit C-1. Defendant in the instant case was aware of the nature of the claim from the date it was filed. Even if the notice was not in strict conformity to the requirements of section 311, defendant is by its own negligence and delay precluded from raising the question at this late date.

The only issue before this court, therefore, is the interpretation of section 108(n) of the act. That section makes compensable: "All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purpose of this clause, partial loss of hearing due to noise shall not be considered an occupational disease." Added February 28, 1956 P.L. (1955) 1095, sec. 1, 77 P.S. §1208(n).

This is a most unusual provision in an occupational disease act. Most states include occupational disease within the Workmen's Compensation Act. Pennsylvania is anomalous in having two separate statutes.[2]

The Federal Government Organization and Employees Act of September 6, 1966, 80 Stat. 532, as amended, 5 U.S.C.A. §8101(5), defines injury as follows: " 'injury' includes, in addition to injury by

2. See A. Barbieri, Pa. Work. Comp. Vol. 2, Chap. 7 (1975), which gives the history of the acts.

accident, a disease proximately caused by the employment." There is no requirement that the disease be uncommon to the general public or peculiar to the industry. The New York Workmen's Compensation Law, N.Y. Workmen's Comp. Law §2 (McKinney 1946), which includes occupational disease, defines injury as follows: " 'Injury' and 'personal injury' mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." Connecticut requires that the occupational disease be "peculiar to the occupation." "Occupational Disease" is defined as including "disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease. . . . " Workmen's Compensation, Gen. Stat. of Conn. §31-275 (1972). This statute clearly focuses on the actual work of claimant rather than the nature of the employer's business. The Connecticut Supreme Court has held that the disease need not be a usual or generally recognized incident of the employment: LeLenko v. Wilson H. Lee Co., 128 Conn. 499, 24 A. 2d 253 (1942). New Jersey also provides for recovery for occupational diseases "which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment." Workmen's Compensation, N.J.S.A. 34:15-31 (1949). The New Jersey Superior Court Appellate Division held that exposure of an insecticide sprayer operator to irritant chemicals which aggravate existing skin disease is compensable: Peraino v. Forstmann Woolen Co., 57 N.J. Super. 1,

153 A. 2d 716 (1959). In Masko v. Barnett Foundry & Machine Co., 53 N.J. Super. 414, 147 A.2d 579 (1959), the court held that it is sufficient if the evidence establishes a reasonable probability that employment was the cause or proximately contributed to the workman's disease.

Only Nebraska strictly requires both that the disease not be common to the general public and that it be peculiar to the industry. The act provides: "The term occupational disease shall mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and shall exclude all ordinary diseases of life to which the general public are exposed." Workmen's Compensation, Rev. Stat. of Neb. §48-151(3) (1943). Diligent research has failed to disclose any reported Nebraska cases on this issue.

Michigan requires that an occupational disease be characteristic of or peculiar to the business of the employer: Workmen's Compensation, Mich. Code of Law Ann. §418.401 (1973). In Vanderbee v. Knape & Vogt Mfg. Co., 48 Mich. App. 488, 210 N.W. 2d 801 (1973), claimant contracted tuberculosis from shouting in close proximity to a fellow employe from whom he contracted the disease. Claimant worked in a tool and die factory which was extremely noisy. The Michigan Court of Appeals overruled the board as a matter of law holding that the disease was contracted in the course of employment "and brought about by the nature of such employment and the conditions under which it was carried on." Mills v. Detroit Tuberculosis Sanitarium, 323 Mich. 200, 212, 35 N.W. 2d 239 (1948). Under such a test Van Loan's illness would certainly be compensable.

On an appeal from the decision of the Workmen's Compensation Appeals Board, the scope of review is limited to determining whether there is substantial evidence to support the board's findings of fact and whether the board committed an error of law: Zacek v. Republic Steel Corp., 25 Pa. Commonwealth Ct. 199, 359 A. 2d 842 (1976); Com., Bureau of Occupational Injury and Disease Compensation v. Brown, 16 Pa. Commonwealth Ct. 148, 329 A. 2d 541 (1974); Crandall v. Downingtown Iron Works, 188 Pa. Superior Ct. 1, 146 A. 2d 312 (1958). Accordingly, the board's findings must be viewed in the light most favorable to claimant who prevailed below: Varner v. Harbison-Walker Refractories Co., 208 Pa. Superior Ct. 318, 222 A. 2d 458 (1966); Brasacchio v. Pennsylvania Highway Dept., 208 Pa. Superior Ct. 212, 222 A. 2d 418 (1966); Habovick v. Curtiss-Wright Corp., 207 Pa. Superior Ct. 80, 215 A. 2d 389 (1965); Crandall v. Downingtown Iron Works, supra. Cf. William v. Spaulding Bakeries, 464 Pa. 29, 346 A. 2d 3 (1975), in which the Supreme Court vacated an order of the Commonwealth Court reversing a finding of the board that claimant's pulmonary emphysema was caused peculiarly by exposure to flour dust. The Supreme Court remanded for the board to make a finding as to whether the disease was peculiar to the occupation. In the case at bar, the board found that "claimant's exposure was peculiar to his occupation because the C-150 compound from which claimant's disease was derived was used as a cleaning agent by claimant in his work for the defendant employer." This court finds that all of the findings of the board were amply supported by the evidence.

Dr. Albert Niden, professor of Medicine and Chief of Pulmonary Disease Section at the Temple University Hospital, appearing as an expert for claimant, testified that claimant suffered from chronic bronchilitis, peribronchile fibrosis and bronchiolitis obliterans. His opinion was predicated upon the pathology report of a lung biopsy, X-rays taken of claimant among other medical records concerning claimant following his admission to Temple Hospital on August 3, 1971 (N.T. 4 and 24, 5/9/73).[3] He further testified that "this is a very unusual involvement of the lung" (N.T.7, 6/9/73). Dr. Niden pointed out that the tile cleaner con-

---

3. "Q. Doctor, you said that bronchiolitis is a highly unusual unique thing to see; is it because of his age, or just generally in adults?

"A. Generally, in adults. It is seen most commonly in situations where there is exposure to irritating fumes, it is found in war gas exposure, phosgene, smoke inhalation in fires, sulfuric acid inhalation and other noxious fumes, so that it is an unusual seration of the lungs and primarily seen where there has been inhalation of irritating fumes, acid fumes as well as others. (N.T. 9, 5/9/73).

" . . . . The analysis (of the tile cleaning fluid) revealed that the material contained very high concentration of hydrochloric acid, close to five normal as I recall — 4 point 8 normal — which is extremely high with concentrated hydrochloric acid. From that I concluded that using this material could result in fumes which produced Mr. Van Loan's lung condition, irritating hydrochloric acid fumes, and that is the condition specifically of chronic bronchiolitis, peribronchiolar fibrosis and bronchiolitis obliterans (N.T. 11, 5/9/73)." He also testified that ". . . there was no evidence of anything elso that he could have been exposed to that could have caused this disease . . . (N.T. 12, 5/9/73).

"Q. Doctor, assume that you have a 40 year old porter who has been working for four or more years in subway stations

tained a very high concentrate of hydrochloric acid which could result in fumes which produced claimant's lung condition.

Dr. Martin J. Sokoloff, an expert witness for the defense, also testified that claimant has chronic bronchiolitis and chronic pulmonary fibrosis, and corpulmonale (N.T.21, 1/30/74). He further testified that exposure to the cleaning agent "could bring about a condition of bronchiolitis." (N.T.28-29, 1/30/74).

The testimony of both claimant's and defendant's expert witnesses reveals that bronchiolitis is not common to the general public and is a very "unusual disease, not common to the general public."

Defendant maintains that this admittedly uncommon disease is not peculiar to industry or occupation. The Occupational Disease Act, supra, was first passed in 1939 and has been amended several times to expand coverage.[4] Section 108(n) was

---

using a substance known as C-150, containing the concentration of hydrochloric acid as shown in the report, and that other than a hospitalization some ten years prior to that for bronchitis and occasional colds in between had no significant symptoms and then developed the symptoms resulting in his hospitalization on August 3, 1971, and the condition of bronchiolitis which was present at the time, in your best professional opinion would this condition have been caused by the exposure to this substance?

"A. It is my opinion that that is true." (N.T. 13-14, 5/9/73).

4. Under the 1972 amendments to the Workmen's Compensation Act of December 6, 1972, P.L. 1627, 77 P.S. 1 et seq., the Occupational Disease Act was revised and incorporated into Workmen's Compensation for all disabilities resulting from exposure after June 30, 1973. Section 108(n) in the new Workmen's Compensation Act was substantially changed. The "new" 108(n) reads, "All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are

added in 1956, Workmen's Compensation, February 28, 1956, P.L. (1955) 1095, sec. 1, 77 P.S. §1208(n). From 1965 to the present time, there has been no reported case interpreting this criterion. From 1956 to 1973, no case has granted compensability under this section which by its terms covers diseases not specifically enumerated in other sections. See Stander, Ecker and Kowitski, Occupational Disease Victims Get a New "Bill of Rights" in Penna., The Legal Intelligencer, July 25, 1973. However, on September 19, 1973, the Supreme Court in Utter v. Asten-Hill Mfg., 453 Pa. 401, 309 A. 2d 583 (1973), held that under proper circumstances, cancer, although a common disease and unusual [sic] to the general public can be an occupational disease as defined in section 108(n) noting that "[Section 108(n)] was intended to be a vehicle for compensation in situations . . . where the . . . diseases, though not enumerated elsewhere in the act, are nonetheless generated by an occupational hazard." Id. at 410. The standard applied in Utter was that a disease though common to the general public could satisfy section 108(n) of the Occupational Disease Act if the disease were peculiar to claimant's occupation by its causes and the characteristics of its manifestation. Id.

In Dunn v. Merck & Co., Inc., 463 Pa. 441, 345 A. 2d 601 (1975), the court held that the Utter decision was not limited in its application to cancer.

causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population." 77 P.S. §27.1 Workmen's Compensation Act, as amended October 17, 1972, P.L. 930, sec. 1. In future cases, unless the disease was contracted prior to June 30, 1973, this section will be available at the option of claimant.

See also U.S. Steel Corp. of America v. Simon, 9 Pa. Commonwealth Ct. 281, 305 A. 2d 913 (1973); P.P.G. Industries, Inc. v. Aites, 7 Pa. Commonwealth Ct. 588, 300 A. 2d 902 (1973).

No reported case, however, establishes a standard for determining whether a disease is peculiar to the industry or occupation. To date, the courts have without supplying a rationale affirmed the decisions of the board. But see dissenting opinion of Hoffman, J., in Moyer v. Morysville Body Works, 215 Pa. Superior Ct. 167, 257 A. 2d 54 (1969), in which he sets forth a standard for determining whether a disease is peculiar to the occupation, Judge Hoffman writes: "In my opinion the determination of whether a disease is peculiar to the occupation must be made by reference to the actual exposure and the hazard of the employment." Id. at 173. See also Woolf v. Bardinet Exports, Inc., 77 D.& C. 230 (1951), construing section 301(c) of the act which provides that compensation should be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general public. In the cited case, the court held that the disease was compensable and claimant was not precluded from recovery simply because more than one occupation has a prevalence of the disease.

"We cannot agree with defendant's contention that this is a disease common to the general population, merely because their medical expert stated that he treated housewives for the same condition resulting from too much immersion of the hands in dish water, and the impartial expert arriving at the

same diagnosis stated that sufficient exposure to dish water might produce this condition. It is clear in this case that claimant's condition did not arise from any source other than her work, and though other people may contract comparable skin diseases from other nonoccupational sources. Section 108(i) would be reduced almost to the meaningless if defendant's theory were adopted." Id. at 232.

In the instant case, Dr. Niden testified that hydrochloric acid is widely used as a cleaning agent. Defendant argues that this widespread use infers that the disease in question is not peculiar to the industry or occupation. Claimant's occupation was that of cleaning subways and washrooms. He was furnished by defendant with a cleaning material which contained high amounts of hydrochloric acid. SEPTA, like many large employers, has employes who are engaged in a wide variety of tasks. There is not merely one occupation for all SEPTA employes. Obviously, the dangers to which motormen are exposed are different from those to which clerical and management personnel are exposed. With respect to this claimant, defendant's industry or occupation was cleaning. Hydrochloric acid is widely used as a cleaning agent and, therefore, a disease not common to the general population caused by such cleaning agents constitutes an occupational disease.

This court finds that the board's conclusions are amply supported by the evidence and that the board did not commit an error of law.

Accordingly, the Workmen's Compensation Appeals Board decision of February 17, 1976, is affirmed and defendant's appeal dismissed.