Westinghouse Electric Corporation, Appellant *v.*
Genevie Santelli, Appellee.

Argued November 17, 1980, before President Judge
CRUMLISH and Judges ROGERS and BLATT, sitting as a
panel of three.

*C. Robert Keenan,* with him *Robert W. Murdoch, Jones, Gregg, Creehan and Gerace,* for appellant.

*Arnold D. Wilner,* with him *Theodore Goldberg, Baskins & Sears,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, February 19, 1981:

The Workmen's Compensation Appeal Board (Board) affirmed a referee's award of compensation benefits to Genevie Santelli. On appeal, the Court of Common Pleas of Allegheny County sustained the Board. We affirm.

Santelli, an employe of Westinghouse Electric Corporation from January 9, 1969 until November 10, 1971, filed a claim petition under the Occupational Disease Act (Act) on March 27, 1973.[1]

Santelli contends that her use of the chemical spray "Krylon" has caused her to contract an occupational disease.[2] Santelli's job as an electronic circuit board assembler required her to spray the assembled boards with krylon. The spraying process accounted for 75% of her work load and was done in a room which measured three feet by six feet. At her hearing, Santelli's physician diagnosed her medical condition as chronic bronchitis, pulmonary edema and recurrent pulmonary infarction. The physician further testified that in his opinion Santelli's medical condition was directly caused by her exposure to krylon.

Santelli relies on Section 108(n) of the Act, which states in relevant part:

---

[1] Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1201 *et seq.*

[2] Krylon contains the gas, toluene. Toluene is a liquid aromatic hydrocarbon, $C_7H_8$, that resembles benzene but is less volatile, flammable and toxic. Websters Third New International Dictionary, 2406 (1966).

The term 'occupational disease,' as used in this act, shall mean only the following diseases:

. . . .

. (n)   All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population.

77 P.S. §1208(n), added by Section 1 of the Act of February 28, 1956, P.L. (1955) 1095.

Westinghouse contends that Santelli has failed to demonstrate that her bronchial condition is not common to the general public within the meaning of Section 108(n). We disagree.

Westinghouse bases its contention on the following testimony as elicited from Santelli's physician on cross-examination.

Q.   I understand your final diagnosis of Mrs. Santelli is chronic bronchitis. Is that correct?

A.   Correct.

Q.   Pulmonary emphysema.

A.   Right.

Q.   And pulmonary infarction.

A.   Pulmonary infarction.

Q.   These three final diagnoses are common to the general public. Aren't they?

A.   Yes they are.

However, on both direct and redirect, Santelli's physician explained the causation and extent of her bronchitis thusly:

Q.   So that we are clear, Doctor, is it your professional opinion that the materials Mrs. Santelli was exposed to at work, was the cause of the lung problems that you have diagnosed and described?

A.   I think that I would say yes.

Q. Do you think they cause the lung problems?

A. I think they did.

Moreover, on redirect, Santelli's physician explained the extent of her disease vis-a-vis the general population in the following manner:

Q. Doctor, these three conditions you diagnosed in Mrs. Santelli—I believe you indicated on direct examination that the frequent and severe incidence of pulmonary infarction you found in her is not common in the general population.

A. I never had anything like her. Never.

Q. And never had anyone like her in the general population—

A. I never had one like her in my thirty years of practice.

It is apparent that Westinghouse misconstrues the intent of Section 108(n) of the Act. The statutory language as it applies to demonstrating a disease which is not common to the general public is not merely addressed to the simple presence of a disease but also its causation and extent. *See Henry v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 262, 387 A.2d 523 (1978).

As there was sufficient evidence before both the referee and the Board to support a finding that Mrs. Santelli suffered an occupational disease because of her exposure to krylon, we can discern no basis in this instant appeal to disturb these findings.[3]

---

[3] Westinghouse also argues that it was denied a subrogation right pursuant to Section 319 of the Occupational Disease Act, 77 P.S. §1419. However, the Court of Common Pleas correctly stated that no right will exist without a showing that a subrogation agreement was made.

ORDER

. The decision of the Court of Common Pleas of Allegheny County is hereby affirmed.

---

CONCURRING OPINION BY JUDGE ROGERS:

I concur in the result of this case because there is sufficient evidence in the record supporting the finding that the claimant's chronic bronchitis and her other conditions, while common to the general population, were "peculiar to the claimant's occupation by [their] causes and the characteristics of [their] manifestation." *Utter v. Asten-Hill Mfg. Co.,* 453 Pa. 401, 309 A.2d 583 (1973). *See also Dunn v. Commonwealth,* 41 Pa. Commonwealth Ct. 69, 398 A.2d 260 (1979); *Polansky Bakery v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 189, 394 A.2d 1324 (1978).